# Illinois Official Reports

## Appellate Court

---

*People v. Hall*, **2017 IL App (3d) 160541**

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. CHARLES J. HALL, Defendant-Appellant. |
| District & No. | Third District<br>Docket No. 3-16-0541 |
| Filed | September 14, 2017 |
| Decision Under Review | Appeal from the Circuit Court of Rock Island County, No. 06-CF-886; the Hon. Frank R. Fuhr, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Nathaniel A. Nieman, of Nieman Law Group, of Moline, for appellant.<br><br>John L. McGehee, State's Attorney, of Rock Island (Patrick Delfino, Lawrence M. Bauer, and Thomas D. Arado, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| Panel | JUSTICE O'BRIEN delivered the judgment of the court, with opinion.<br>Justices Carter and Schmidt concurred in the judgment and opinion. |

**OPINION**

¶ 1       Defendant, Charles J. Hall, appeals the order of the circuit court of Rock Island County denying his petition for discharge or conditional release upon finding that defendant was still a sexually dangerous person. We affirm.

¶ 2                                                   FACTS

¶ 3       Defendant was charged with aggravated criminal sexual abuse (720 ILCS 5/12-16(c)(1)(i) (West 2004)) in that defendant fondled the genitals of B.P. B.P. was 10 years old at the time of the offense, and defendant was 19 years old.

¶ 4       On October 11, 2006, the State filed a petition to proceed under the Sexually Dangerous Persons Act (Act) (725 ILCS 205/0.01 *et seq.* (West 2006)). The petition alleged that defendant admitted to fondling the genitals of the victim in the instant case. The petition also alleged that defendant committed several prior offenses. Defendant admitted the allegations in the petition. Two psychiatrists evaluated defendant and opined that he was sexually dangerous. Defendant stipulated to the contents of the psychiatric evaluations. On November 17, 2006, the court ordered that defendant be committed to the Department of Corrections (DOC) for treatment pursuant to the Act.

¶ 5       On December 3, 2013, defendant filed a *pro se* application for release or conditional discharge. The court appointed counsel, and defendant filed a petition for discharge or conditional release through counsel.

¶ 6       A hearing was held on defendant's petition. The State called Dr. Kristopher Clounch, a clinical psychologist, as its only witness. Clounch testified that he performed a psychological evaluation of defendant. In preparing his evaluation, Clounch reviewed defendant's past evaluations, police reports, and current treatment records. Clounch also communicated with defendant's treatment therapist and interviewed defendant. A written report of Clounch's evaluation of defendant—which was prepared approximately 13 months before the hearing—was admitted into evidence.

¶ 7       Clounch testified that some of the things defendant told him during the interview were significantly different than what defendant said in prior reports. Defendant denied some of the information he provided in the past concerning his prior sex offenses and deviant sexual interests. Specifically, defendant denied having sexual fantasies about children, having violent sexual fantasies, and committing the offense he was charged with in the instant case.

¶ 8       Clounch stated that defendant was adjudicated a juvenile delinquent in 2001 for committing the offense of criminal sexual abuse. Defendant was 15 years old, and his victim was a 12-year-old girl. The girl reported that defendant kissed her and said he wanted to have sex with her. She refused. Defendant then removed his penis from his pants. Defendant removed the girl's pants and fondled her vagina and breasts. Defendant then forced the girl to "masturbate his penis." Defendant admitted to Clounch that he penetrated the girl's vagina with his finger.

¶ 9       While defendant was on probation for the offense of criminal sexual abuse, he committed the offense of residential burglary. Specifically, defendant stole a camcorder from a residence and recorded a video of himself masturbating.

¶ 10 In July 2005, defendant's parole officer conducted a home visit and discovered pornographic materials in defendant's possession, including a pregnancy magazine that had photographs of nude babies. Defendant admitted to his parole officer that he masturbated while looking at photographs of the children.

¶ 11 On October 31, 2005, defendant was arrested for violating his parole when he attempted to leave his home in a Halloween costume with a bag of candy. Defendant told officers that he planned to hand out candy to children, snatch a child, and force the child to perform oral sex on him. On December 5, 2005, defendant was arrested for aggravated cruelty to animals and sexual contact with an animal. Court records indicated that defendant had killed the family cat and masturbated on the cat's dead body.[1]

¶ 12 In the instant case, defendant was charged with aggravated criminal sexual abuse for having sexual contact with 10-year-old B.P. Defendant's parole officer observed two male children going to the door of defendant's residence. The officer spoke with the children, who said they were there to play with defendant. The officer learned that defendant had wrestled with B.P. B.P. told the police that nothing happened during the wrestling that he recognized as sexual. However, defendant admitted that he rubbed his elbow against B.P.'s penis and became sexually aroused. Defendant also told the officers that he believed he was sexually dangerous and if he was released without treatment he would likely beat or kill a child for sexual pleasure.

¶ 13 Clounch stated that between 2006 and 2007, defendant incurred 16 institutional rule violations for breaking prison rules that all inmates are required to follow. These violations included failure to report, unauthorized movement, violation of rules, and contraband. Defendant incurred a violation for giving false information to an employee when he told a prison employee that he performed oral sex on his cellmate. He later admitted that he lied so that he would get another cellmate. Defendant also incurred two violations for sexual misconduct. On one occasion in April 2007, defendant exposed himself to another inmate. On another occasion in November 2007, defendant performed oral sex on another inmate.

¶ 14 Defendant also incurred 80 "tickets" for violation of the rules for the sexually dangerous persons program. Many of defendant's tickets were for missing group therapy, arriving late to group therapy, leaving group therapy early, or missing other treatment activities.[2] Defendant had been placed on probation on 12 occasions and suspended from treatment on 15 occasions. Since Clounch prepared his written evaluation, defendant incurred 18 more tickets, was placed on probation six times, and was suspended from treatment one time.

¶ 15 Defendant was required to attend group therapy once a week for an hour and a half. Defendant was in phase one of the treatment program. At the time of Clounch's written evaluation, treatment staff had rated defendant as "unsatisfactory" in all 23 areas on his semiannual program evaluation. On defendant's most recent semiannual evaluation, treatment staff rated defendant as "some need for improvement" in the areas of offense disclosure and accepting responsibility. Defendant was rated as "considerable need for improvement" in 16 areas and "unsatisfactory" in 10 areas.

---

[1]The State's petition to proceed under the Act also alleged that defendant admitted to his parole officer that he killed three pet gerbils.

[2]Clounch's written report stated that 55 of defendant's 80 tickets were for missing treatment groups and activities. Six tickets were for inappropriate sexual behavior.

¶ 16    Defendant's primary therapist at the time of Clounch's written report told Clounch that defendant was "highly sexualized and indicated that he didn't care what or who he had sex with." Defendant's therapist at the time of the hearing stated that defendant had not made significant progress and had not discussed his sexual offenses. Rather, when defendant spoke in group therapy he often gave updates on his communication with his family.

¶ 17    Other treatment providers described defendant as being "sexualized." They reported that defendant was "provocative and manipulative in his behavior on the unit with other inmates" and participated in sexual touching and joking with other inmates as well.

¶ 18    When Clounch interviewed defendant, defendant admitted that he killed a cat and was aroused by it. He otherwise denied ever having any deviant arousal or fantasies. Defendant did not have a sound understanding of why core issues were addressed in treatment, and he had a simplistic understanding of why high-risk situations were important to address in treatment. Defendant stated that his only core issue was self-control and that his high-risk situations were being around young children, young women, or girls.

¶ 19    Clounch asked defendant about his deviant cycle, and defendant said his only trigger was seeing children or seeing young girls on television or in a magazine. When Clounch asked defendant how he would avoid his triggers, defendant said he would change the channel on the television or dispose of the magazine. Defendant was unable to describe his deviant cycle and did not have an understanding of the behaviors, thoughts, and feelings that contributed to his sexual offending behavior in the past. This lack of insight made it difficult for him to understand what could lead to future offenses.

¶ 20    Clounch diagnosed defendant with the following paraphilic disorders: sexual sadism; zoophilia for sexual contact with animals; and pedophilic disorder, sexually attracted to males, nonexclusive. The "nonexclusive" referred to the fact that defendant reported being attracted to adults as well as children. In discussing defendant's pedophilic disorder, Clounch noted defendant's prior sex offenses against children and his admission that he masturbated while viewing photographs of children in a pregnancy magazine.

¶ 21    Clounch stated that defendant continued to suffer from the mental disorders because "[a]ccording to the current understanding of paraphilic disorders, they do not dissipate across time." Clounch opined that an individual with a paraphilic disorder would continue to have deviant sexual arousal and/or fantasies for the rest of his or her life. Through treatment, however, such an individual could put interventions in place to reduce his or her risk of offending in the future.

¶ 22    Clounch used two actuarial measures to assess defendant's risk of reoffending: the Static-99R and the Stable 2007. Defendant's scores on both assessments indicated that he was at a high risk to reoffend. Clounch also testified that the following dynamic risk factors applied to defendant: sexual preoccupation, sexual preference for children, emotional congruence with children, sexualized violence, multiple paraphilias, lack of an emotionally intimate relationship with an adult, and resistance to rules and supervision.

¶ 23    Regarding sexual preoccupation, Clounch noted that defendant had "a significant history of frequent arousal and fantasies reported while in the community." In a five-year period, defendant was arrested on four occasions for sexually motivated offenses. Despite being arrested and charged for these offenses and participating in treatment, defendant continued to reoffend. Since defendant was committed to the DOC, he engaged in sexually inappropriate behavior with other inmates in the institution. Defendant told Clounch that the last time he

had sexual contact with another inmate was in 2013. Defendant also had a history of frequent masturbation.

¶ 24 Regarding the factor of sexual preference for children, Clounch stated that the research indicated that individuals with sexual behavior or fantasies toward children had an increased risk to reoffend in the future. Clounch noted that defendant had committed sexual offenses against two children and reported having fantasies about sexual activity with children. In the past, defendant used photographs of infants for masturbation. Clounch stated that defendant reported that he was currently having sexual fantasies about adult females, but this was the first time he ever reported having fantasies about adult females. Defendant denied ever having sexual contact with an adult female. Clounch stated that defendant previously reported in treatment that he had sexual fantasies about adult males and "acted out" with several adult males at the institution. However, at the time of Clounch's interview, defendant denied ever having sexual fantasies about children or adult males.

¶ 25 Regarding the factor of emotional congruence with children, Clounch stated that defendant told him that he had a history of having friends that were children. Clounch noted that defendant had 10-year-old friends when he was 19 years old. Defendant said that children were "more like him in that they are on the same mental level that he is." Defendant said that he used to play video games and watch movies with children. The factor of lack of emotionally intimate relationships with adults also applied to defendant because he had never been married or had significant relationships with adults in the community.

¶ 26 Clounch stated that the factor of sexualized violence applied to defendant because defendant previously reported to police officers and a psychologist who interviewed him prior to his initial commitment that he would like to beat, choke, or kill a child for sexual pleasure. During Clounch's interview with defendant, defendant said he never had violent sexual fantasies and could not remember the prior statements he made to police officers and the psychologist.

¶ 27 Regarding the factor of multiple paraphilias, Clounch stated that individuals with more than one deviant sexual interest had an increased risk for reoffending in the future. Clounch diagnosed defendant with three paraphilias: sexual violence, sex with children, and sexual contact with animals.

¶ 28 The factor of resistance to rules and supervision also applied to defendant because defendant had "a long history of oppositional behavior beginning in adolescence." Defendant continued to display negative behavior and opposition to participation in treatment during his commitment. Clounch stated that individuals who had difficulty abiding by rules and opposition to external control or authority figures had a greater risk to reoffend.

¶ 29 Clounch testified that there were three protective factors that reduced an individual's risk to reoffend in the future: (1) advanced age, (2) significant health issues, and (3) significant progress in and/or completion of treatment. None of the factors applied to defendant.

¶ 30 Clounch opined that defendant was still a sexually dangerous person. Defendant had three paraphilic disorders, which had existed for longer than one year. Defendant had criminal propensities to commit sex offenses and had demonstrated propensities toward acts of sexual assault or molestation of children. Clounch opined that defendant was substantially probable to reoffend in the future due to defendant's current mental health diagnoses and the fact that the risk assessments indicated that he was at a high risk to reoffend. Clounch noted that defendant was currently denying a lot of the sexually deviant behavior that he previously

reported, which indicated that he was not addressing his history and behaviors in treatment. Clounch opined that defendant had not sufficiently recovered to be placed on conditional release because he was still at a high risk to reoffend and had not made sufficient progress in treatment to reduce that risk.

¶ 31    Defendant called Dr. Kirk Witherspoon, a licensed clinical psychologist, as a witness. Witherspoon conducted a psychological evaluation of defendant where he interviewed defendant for over six hours. Witherspoon administered two actuarial assessments: the Static-2002R and the Multisample Age-Stratified Table of Sexual Recidivism Rate, or MATS-1. Witherspoon did not discuss the results of those assessments. Witherspoon noted that defendant was a juvenile when his offenses occurred. Witherspoon said that the research showed that the reoffending rates are so low for adolescent sex offenders during adulthood that those tools greatly over-predict the risk ratings.

¶ 32    Witherspoon disagreed with the use of the Static-99R assessment because one of the factors it considered was whether an individual had lived with someone romantically for two years. Witherspoon opined that that factor was unfair to someone who commits an offense when he or she is young. Additionally, the Static-99R considered both arrests and convictions, whereas Witherspoon believed only convictions should be considered. Witherspoon noted that a commitment as a sexually dangerous person is not a conviction.

¶ 33    Witherspoon opined that the semiannual evaluations prepared by defendant's treatment staff were problematic because the people who prepared the evaluations worked in the treatment program, which was a conflict of interest. Witherspoon also stated that research showed that evaluations of treatment providers "are about as accurate as a coin toss" and "are more inaccurate more often than not."

¶ 34    Witherspoon opined that defendant did not actually have a paraphilia. Regarding defendant's zoophilia diagnosis, Witherspoon stated that defendant's behavior did not reflect a paraphilia *per se* due to defendant's lack of ongoing interest in engaging in sexual conduct with animals. Rather, Witherspoon opined that defendant's behavior was "an opportunistic act from a teenager suffering from bipolar disorder."

¶ 35    Witherspoon opined that defendant should be released entirely and did not need oversight from the DOC. Rather, defendant needed "some general mental health care to improve his social skills and community adjustment and vocational planning." The court admitted Witherspoon's report into evidence. However, the report is not contained in the record on appeal.

¶ 36    Defendant testified that he was in level one of the sexually dangerous persons' treatment program at Big Muddy River Correctional Center. Defendant said he believed treatment had helped him somewhat. Defendant had had several different treatment facilitators, and he believed that interrupted his treatment. Defendant had group therapy once a week. The last two weeks, he did not attend therapy because his cellmate was sick. Defendant had also missed therapy in the past because he had "problems with therapists." Also, sometimes defendant "just wasn't up to" going to therapy because he was frustrated and experiencing depression. Defendant tried to participate in some voluntary classes and "almost completed a couple." However, defendant "would basically mess up" and "get kicked out of the group" when he was close to completing the class. Defendant did not believe he would be a danger to society if he were released.

¶ 37    After hearing arguments, the court found that the State proved by clear and convincing evidence that defendant remained a sexually dangerous person. The court acknowledged that Witherspoon believed defendant was misdiagnosed "in that the acts that there is no question occurred were the result of adolescent bipolar disorder." The court noted, however, that Clounch and the psychiatrist who evaluated defendant at the time of his initial commitment disagreed with Witherspoon's diagnosis. The court reasoned that "if Dr. Witherspoon was right and the prior acts were just a symptom of a bipolar disorder in an adolescent, [defendant] would have easily progressed beyond phase one in treatment." The court found that "the evidence [was] clear and convincing that he does suffer from three different paraphilic disorders." The court found it troubling that defendant killed four to five family pets, dressed up in a dog costume on Halloween to go out and try to snatch a child, and wrestled with a 10-year-old child for sexual gratification when defendant was 19 years old. The court concluded that defendant had not been successfully treated for his mental illness at that point.

¶ 38                                              ANALYSIS

¶ 39    Defendant argues that the State failed to prove by clear and convincing evidence that he was still a sexually dangerous person. We find that the circuit court did not err in finding that defendant was still sexually dangerous, as the opposite conclusion was not clearly apparent.

¶ 40                                        I. Standard of Review

¶ 41    Initially, we hold that the proper standard of review is whether the circuit court's finding was against the manifest weight of the evidence. See *People v. Donath*, 2013 IL App (3d) 120251, ¶ 38; *In re Commitment of Sandry*, 367 Ill. App. 3d 949, 978 (2006). "A decision is against the manifest weight of the evidence only if an opposite conclusion is clearly apparent." *Donath*, 2013 IL App (3d) 120251, ¶ 38.

¶ 42    We reject the State's argument that the proper standard of review is whether, when viewing the evidence in the light most favorable to the State, any rational trier of fact could have found by clear and convincing evidence that defendant remained a sexually dangerous person. The State's proposed standard appears to be a hybrid of the reasonable doubt standard of review set forth in *People v. Collins*, 106 Ill. 2d 237, 261 (1985), and the requirement in section 9(b) of the Act (725 ILCS 205/9(b) (West 2014)) that the State prove by clear and convincing evidence during a recovery hearing that the applicant is still a sexually dangerous person. In support of its argument, the State cites *People v. Bingham*, 2014 IL 115964, *In re Commitment of Fields*, 2012 IL App (1st) 112191, and *People v. Trainor*, 337 Ill. App. 3d 788 (2003). *Bingham* and *Fields* concern a circuit court's ruling on an initial petition to declare an individual a sexually dangerous person or a sexually violent person, in which the State must prove the allegations of the petition *beyond a reasonable doubt*. *Bingham*, 2014 IL 115964, ¶¶ 25, 30; *Fields*, 2012 IL App (1st) 112191, ¶ 63. *Trainor* involved a recovery petition under a prior version of the Act. *Trainor*, 337 Ill. App. 3d at 794. At the time *Trainor* was decided, the State was required to prove *beyond a reasonable doubt* that an applicant in a recovery proceeding was still sexually dangerous. *Id.*; *People v. Trainor*, 196 Ill. 2d 318, 338 (2001).

¶ 43    The legislature subsequently amended the Act to specify that the State's burden of proof at a recovery hearing was to prove by clear and convincing evidence that the applicant was

still sexually dangerous. 725 ILCS 205/9(b) (West 2014). See also *People v. Craig*, 403 Ill. App. 3d 762, 767 (2010). Rather than combining the *Collins* reasonable doubt standard of review with the clear and convincing evidence standard, we find that the proper standard of review was whether the court's determination was against the manifest weight of the evidence, as set forth in *Donath*, 2013 IL App (3d) 120251, ¶ 38, and *Sandry*, 367 Ill. App. 3d at 978.

¶ 44                                  II. Finding of Sexual Dangerousness

¶ 45        Turning to the merits of defendant's argument on appeal, we find that the circuit court's determination that defendant was still a sexually dangerous person was not against the manifest weight of the evidence. Section 1.01 of the Act defines "[s]exually dangerous persons" as:

> "All persons suffering from a mental disorder, which mental disorder has existed for a period of not less than one year, immediately prior to the filing of the petition hereinafter provided for, coupled with criminal propensities to the commission of sex offenses, and who have demonstrated propensities toward acts of sexual assault or acts of sexual molestation of children ***." 725 ILCS 205/1.01 (West 2014).

Also, a finding of sexual dangerousness under the Act "must *** be accompanied by an explicit finding that it is 'substantially probable' the person subject to the commitment proceeding will engage in the commission of sex offenses in the future if not confined." *People v. Masterson*, 207 Ill. 2d 305, 330 (2003).

¶ 46        Here, the record supports the court's finding that defendant was still a sexually dangerous person. Clounch testified that defendant had paraphilic disorders that had existed for more than one year: sexual sadism, zoophilia, and pedophilic disorder. Clounch testified that paraphilic disorders did not dissipate over time and that an individual with such a disorder would continue to have sexual arousal and fantasies associated with the disorder for the rest of his or her life. However, through treatment, individuals with paraphilic disorders could implement interventions that could reduce their risk to reoffend. Clounch opined that defendant had not made sufficient progress in treatment to reduce his risk to reoffend. We note that one of defendant's past therapists described him as "highly sexualized and indicated that he didn't care what or who he had sex with."

¶ 47        We acknowledge that Witherspoon testified that defendant did not suffer from a paraphilic disorder. Witherspoon specifically testified that defendant's behavior associated with the zoophilia diagnosis was an act of an opportunistic adolescent with bipolar disorder rather than indicative of zoophilia. Because Witherspoon's report is not in the record on appeal, it is unclear what basis, if any, Witherspoon had for believing that defendant did not have sexual sadism disorder or pedophilic disorder. The court explicitly accepted Clounch's testimony that defendant suffered from three paraphilic disorders over Witherspoon's testimony that he did not suffer from a paraphilic disorder. It was the province of the circuit court to determine the weight to be afforded to the witnesses' testimony, and we defer to the court's credibility determination. See *Donath*, 2013 IL App (3d) 120251, ¶ 41.

¶ 48        We reject defendant's argument that there was no evidence that he continued to suffer from a paraphilia, which is based on defendant's own self-serving statement to Clounch that he currently had fantasies about adult women. Clounch noted, however, that this was the first time defendant reported having sexual fantasies about adult women and that defendant had

never had sexual contact with an adult woman. We also note Clounch's testimony that paraphilias do not dissipate over time.

¶ 49     Clounch also opined that defendant had criminal propensities toward the commission of sex offenses and toward acts of sexual assault and/or molestation of children. Clounch's opinion is supported by defendant's past offenses. Defendant had a prior conviction for aggravated cruelty to animals for an incident where defendant killed his family cat and masturbated on the cat's dead body. Defendant reported that he also killed three gerbils and felt sexually aroused after doing so. On another occasion, defendant left his house on Halloween night in a costume with a bag of candy while he was on electronic home confinement. Defendant told police officers that he planned to snatch a child and force the child to perform oral sex on him. In the instant case, defendant was charged with aggravated criminal sexual abuse for fondling the genitals of a 10-year-old boy while they were wrestling. Defendant previously admitted to police officers that he touched the boy's penis with his elbow and became sexually aroused. Although all of these incidents occurred prior to defendant's incarceration, we note Clounch's testimony that paraphilic orders do not dissipate over time and that defendant has not made sufficient progress in treatment to reduce his risk to offend.

¶ 50     Additionally, Clounch testified that defendant was substantially probable to reoffend in the future due to his mental health diagnoses. Additionally, two actuarial assessments—the Static 99R and the Stable 2007—showed that defendant posed a high risk to reoffend. Additionally, Clounch testified that several dynamic factors indicated that defendant was at an increased risk to reoffend. These factors included sexual preoccupation, sexual preference for children, emotional congruence with children, sexualized violence, multiple paraphilias, lack of an emotionally intimate relationship with an adult, and resistance to rules and supervision. Clounch also noted that defendant had not made progress in treatment.

¶ 51     We reject defendant's argument that we should not consider the results of the actuarial assessments based on Witherspoon's testimony that they are not predictive of recidivism risk, especially for people who were juveniles when they committed their offenses. We note that defendant was over 18 years old during the Halloween incident, the incident with the cat, and the incident where he wrestled with the 10-year-old boy. Additionally, even if we were not to consider the results of the actuarial testing, the dynamic risk factors Clounch discussed and defendant's lack of progress in treatment show that defendant is at risk to reoffend in the future.

¶ 52     Finally, we reject defendant's argument that we should excuse his lack of progress in treatment because the "arbitrary rules" of the sexually dangerous persons program have prevented him from attending and completing treatment. The majority of the tickets defendant received were for missing treatment, arriving late, or leaving early. We note that defendant only had therapy once per week for an hour and a half. These infractions were within defendant's control, and we will not excuse defendant's lack of progress in treatment on this basis.

¶ 53                                                    CONCLUSION

¶ 54     The judgment of the circuit court of Rock Island County is affirmed.

¶ 55     Affirmed.