2019 IL App (3d) 180309

Opinion filed September 25, 2019

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2019

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the Circuit Court |
| | ) | of the 21st Judicial Circuit, |
| Plaintiff-Appellee, | ) | Kankakee County, Illinois, |
| | ) | |
| v. | ) | Appeal No. 3-18-0309 |
| | ) | Circuit No. 07-CM-1736 |
| | ) | |
| THEODORE P. HOUDE, | ) | Honorable |
| | ) | Kathy Bradshaw Elliott, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE HOLDRIDGE delivered the judgment of the court, with opinion
Justices Lytton and Wright concurred in the judgment and opinion.

**OPINION**

¶ 1 Since May 2008, the defendant, Theodore P. Houde, has been involuntarily committed to the Illinois Department of Corrections as a sexually dangerous person. In November 2016, he filed an application for discharge or conditional release. Following a hearing, the trial court found that the defendant remained a sexually dangerous person. The defendant appeals.

¶ 2 FACTS

¶ 3 In November 2007, the State filed a petition against the defendant in criminal proceedings to have him declared a sexually dangerous person pursuant to the Sexually Dangerous Persons Act (SDP Act) (725 ILCS 205/1.01 (West 2006)). At that time, the defendant

was charged with attempted indecent solicitation of a child. The information alleged that the defendant performed a substantial step toward the commission of that offense, in that he, a person over 17 years old or older, with the intent that the offense of aggravated criminal sexual abuse be committed, knowingly attempted to solicit a person whom he believed to be a child under the age of 13 years old.

¶ 4     The trial court conducted a hearing on the State's petition before a jury. The child testified, that in September 2007, he attended an outdoor party sponsored by his church. He saw the defendant videotaping the party. The defendant asked the child his name and age and they had no further interaction that day. The next month, the defendant spoke to the child before a church service where the child served as an altar boy. The defendant told the child that they needed to speak after the church service. After the service, the defendant caught the child's attention and they walked out of the church together while talking. The child testified that the defendant asked him if he liked video games and the child answered in the affirmative. The defendant then asked the child if he had a parent present. The child told the defendant that his mother was waiting for him. The defendant spoke to the child's mother and gave her a note with his name and phone number. The defendant told the mother that he invited the child to come to his home to play video games. The mother consented and gave the defendant her phone number.

¶ 5     After receiving the phone number, the defendant, the mother, and the child walked out of the church together. The mother and the child laughed about the encounter in their car. The child then informed his mother that the defendant videotaped the party a month prior. The mother contacted a relative who worked for the police department. The relative asked a detective to "look into it" and speak with the mother and the child. The detective met with them and showed the child the defendant's photograph. The child positively identified the defendant. The detective

2

obtained the photograph from the sex offender registry. Two days later, the detective questioned the defendant. The defendant stated that he was at the church, spoke to the child, and confirmed the mother and the child's stories. The defendant consented to a search of his home and the detective seized a video camera, the videotape of the party, and 14 other videotapes.

¶ 6		Two psychiatrists also testified at the hearing. Both psychiatrists opined that the defendant was a sexually dangerous person based on the defendant's prior convictions and interviews with the defendant. We note that the defendant's criminal history included: indecent liberties with a child (1981), aggravated criminal sexual abuse (1989), possession of child pornography (1989), and aggravated criminal sexual abuse (2002).

¶ 7		The jury found the defendant to be a sexually dangerous person. The trial court entered an order adjudicating the defendant a sexually dangerous person and committing him to the custody of the Illinois Department of Corrections. The defendant filed an appeal, challenging, *inter alia*, the State's charging instrument. This court affirmed the trial court's order declaring the defendant as a sexually dangerous person. See *People v. Houde*, No. 3-08-0402 (2009) (unpublished order under Illinois Supreme Court Rule 23).

¶ 8		In November 2016, the defendant filed an application for discharge or conditional release wherein he argued that he was no longer a sexually dangerous person (725 ILCS 205/9(a) (2016)). In May 2018, the court held a hearing on the defendant's application. Defense counsel asked that the defendant be appointed as an expert witness on his own behalf and argued that the court's refusal would result in a violation of the defendant's right to due process and equal protection because the defendant was allowed to have an expert witness to counter the State's expert witness. Relying on *People v. Burns*, 209 Ill. 2d 551 (2004), the court held that the defendant was not entitled to an expert witness on a sexually dangerous person recovery petition.

¶ 9        The State called Dr. Kristopher Clounch, a licensed clinical psychologist employed by Wexford Health Sources, to testify. Dr. Clounch testified that he had worked for Wexford Health Source since 2012 and he was the primary evaluator for sexually dangerous persons recovery petitions. He engaged in continuing education and belonged to the Association for Treatment of Sexual Abusers. Defense counsel questioned Dr. Clounch at length regarding his training and experience with the assessments he used to evaluate the defendant. The court asked defense counsel if he was objecting to Dr. Clounch being tendered as a witness, to which he replied that he was not objecting at that point. The court then allowed Dr. Clounch to testify as an expert.

¶ 10       Dr. Clounch stated that he received a request to evaluate the defendant in 2017. Upon receiving this request, he (1) reviewed the defendant's criminal history, including court records and police reports, and treatment records; (2) met with the defendant's therapists from his program; (3) interviewed the defendant; and (4) completed his report.

¶ 11       As part of Dr. Clounch's evaluation, he completed a psychosexual history, which assessed the defendant's history of sexual behaviors, his masturbation history, his relationship history, the number of partners that he had engaged in sexual contact with, how he learned about sexual issues, and how these proceeded throughout his life. When Dr. Clounch was asked if there was anything significant in the defendant's psychosexual history, he noted that the defendant had his first sexual experience at the age of four or five when an adolescent male cousin molested him. The defendant stated that he was forced to touch the cousin's penis. Dr. Clounch noted, that at the age of eight, the defendant rubbed himself against a young girl at a swimming pool. The defendant also reported, that at the age of 12 or 13, he recalled that he and a male friend rubbed their penises against each other's buttocks with their clothes on. Dr. Clounch believed that the defendant's masturbation frequency was relatively common. However, the defendant used child

4

pornography to masturbate, which indicated that he had an arousal and attraction to young males.

¶ 12    Dr. Clounch also noted that the defendant's entire criminal history consisted of sexually motivated offenses. The defendant was first arrested in June 1981 and charged with three counts of indecent liberties with a child. These charges arose from the defendant's sexual contact with three young males between the ages of 10 and 12. The victims indicated that the defendant fondled their penises and attempted anal intercourse through clothing. When Dr. Clounch asked the defendant about this incident, he admitted that he rubbed himself on the buttocks of the victims and indicated that the abuse occurred for several weeks. In February 1989, the defendant was arrested and charged with 11 counts of aggravated criminal sexual abuse and two counts of child pornography. Records indicated that the defendant was found to be in the possession of pictures of young males between the ages of 11 and 16. The defendant admitted that he had sexual contact with several of the individuals in the photographs. In 2002, the defendant was charged with one count of aggravated criminal sexual abuse with a victim age of 13 to 18. The victim reported numerous incidents of sexual contact. In 2007, the defendant was charged with attempted indecent solicitation of a child. This was the final charge that led to the State filing a petition to have him declared a sexually dangerous person.

¶ 13    Dr. Clounch also testified regarding the defendant's treatment. He stated, that when the defendant was committed in 2008, he was enrolled and participated in the treatment program up until recently when he voluntarily signed out of the program in November 2017. The defendant signed out of the program after Dr. Clounch evaluated him. There were four phases to the treatment program and the defendant quit during the second phase. According to treatment records and Dr. Clounch's meeting with the defendant's therapist, the defendant failed to make significant progress in treatment since his last evaluation in 2014. The defendant's primary

therapist indicated that the defendant participated occasionally while in groups and provided feedback to others in the group. There were groups where he discussed his own history, attraction to young males, sexual deviance, life history, and victimology. The defendant's therapist indicated that the defendant did not make specific progress with respect to understanding his offenses, he had difficulty understanding victim empathy and displaying it for his victims, and the defendant also failed to understand that there was harm caused by his offenses. The therapist indicated that the defendant largely believed that his offenses did not significantly harm the victims because there was no force involved in his offending.

¶ 14    The defendant's therapist also indicated that the defendant identified as a pedophile. Dr. Clounch recalled, that in his most recent interview with the defendant, the defendant admitted that he had sexual fantasies and arousal to young males. Dr. Clounch noted that the defendant's reporting in 2017 aligned with his 2014 report. He also noted that the defendant believed that his victims were complicit in the offenses because they continued to come over to his house and never pushed him away. During a treatment group in 2015, the defendant stated that he believed molestation was acceptable if no force was involved and that consensual sex between adults and boys was acceptable because it was accepted in several parts of the world and several organizations supported it. During the most recent interview, the defendant stated these were his past beliefs. When asked how his views changed, the defendant was unable to clarify. Dr. Clounch believed the defendant continued to display some of those beliefs with how he defined his victims and how he believed they sought sexual contact from him. During a group in 2016, the defendant stated that he continued to have sexual fantasies about young males, which involved him sleeping with young boys, hugging, kissing, and rubbing their buttocks. He reported that these fantasies occurred daily. However, in the 2017 evaluation, the defendant

6

denied having any recent deviant arousal or fantasy of young boys.

¶ 15    Dr. Clounch also noted that the defendant repeatedly indicated that he had fondled and engaged in oral sex with his victims. The defendant described that young boys were easy to manipulate, he had power over them, and there was no long-term commitment with young boys. The defendant described that he made himself feel better by engaging with these young boys.

¶ 16    Dr. Clounch also asked the defendant about his core beliefs. The defendant did not have a clear understanding of what core beliefs were, but he did indicate that he no longer believed that molestation and sex with children were acceptable. Dr. Clounch stated that the defendant was describing cognitive distortions and he did not understand the concept of core beliefs, which was discussed during the groups. Dr. Clounch also discussed high-risk situations and the defendant indicated that any situation involving children would be high risk for him. The defendant provided several triggers to his deviant cycle, such as thinking about a child, seeing a child, stressors, emotions, or something that he reads.

¶ 17    The defendant stated that his deviant cycle would begin about him having a thought about a boy, then fantasizing about a boy and looking at pictures of boys, then he would look for a child, make contact with the child to determine if the child fits his criteria, he would touch the child on the head or shoulder to determine if the child would be open to touching, and if the child responds positively, he then would begin grooming the child. After a period of time, the defendant would touch the child on the leg to try to get the child to become more comfortable with him. After he believed that the child was comfortable, he has the child remove all of his clothing in front of the defendant and take a shower. The defendant would then perform sexual acts on the child. The defendant reported that his feelings would then be reduced and his cycle would lay dormant until he is triggered again. Dr. Clounch believed that the defendant left out

7

significant detail pertaining to his grooming process and what he looked for in a child. When Dr. Clounch asked the defendant about interventions and what he could do to avoid reoffending, he indicated that he could get out of his head, listen to music, watch television, talk to somebody, or talk about it in group. The treatment recommendation score was very considerable need for improvement in identifying and understanding his cycle behavior and recognizing when he is displaying behavior characteristics of his cycle.

¶ 18    Dr. Clounch also asked the defendant what his plans would be if he were released. The defendant indicated that he would live at a senior facility. He did not have a specific city in mind; he just indicated anywhere that would accept him. He also stated he would seek Social Security benefits and would have the support of a long-time friend. Medically, the defendant was suffering from pain from a hernia issue and was being treated for high blood pressure, high cholesterol, and atrial fibrillation (irregular heartbeat). Dr. Clounch also asked the defendant if he had any mental health issues, which the defendant denied.

¶ 19    Dr. Clounch opined that the defendant suffered from two mental disorders. First, pedophilic disorder, sexually attracted to males, nonexclusive subtype. Dr. Clounch based this diagnosis on the defendant's history of contact with eight young males that he abused between the ages of 10 and 13. Additionally, the defendant reported having 8 to 10 other males between the ages of 10 and 15 that he also touched. The defendant also engaged in oral and anal sex with two of the victims for a period of 18 months to 2 years and engaged in sexual behaviors with four or five other males from 1981 to 2002. Then, in 2006, he attempted to entice another young male to go to his home. Second, Dr. Clounch diagnosed the defendant with fetishistic disorder, aroused by young males' buttocks in a controlled environment. Dr. Clounch stated this diagnosis was based on the defendant's history and own reports that he had an arousal to and sexual

8

interest in young males' buttocks. Additionally, the defendant reported that fantasizing has specifically been about young males buttocks and he had engaged in contact with at least eight different males, which included contact with the defendant's genital area and the children's buttocks either clothed or unclothed. Videos retrieved from a search of the defendant's home in 2002 showed that he recorded young males' buttocks in the neighborhood or when they came to his house for Halloween. Dr. Clounch also opined that these disorders have been present since at least the defendant's first arrest in 1981.

¶ 20    Dr. Clounch then discussed the tools he used to assess the defendant. First, he used the Static-99R, which was used to assess the defendant's risk level based on similar individuals and their recidivism rates. Based on the various items Dr. Clounch considered, such as the defendant's age, whether the defendant ever lived with a romantic partner for at least two years, and the specifics of his offenses, he rated the defendant with a score of five. This score indicated that he was at an above average risk level and individuals with a score of five have been found to reoffend at a rate of 2.7 times the rate of the typical sex offender. Dr. Clounch also used the Stable-2007 to assess the defendant, which considers various factors, such as the defendant's capacity for relationship stability, emotional congruence with children, lack of concern for others, and sexual drive. Dr. Clounch gave the defendant a score of 15 out of a possible 26. He indicated that scores 12 and above are listed as high risk or high level of criminogenic needs. Dr. Clounch opined, with a reasonable degree of psychological certainty, that the defendant had the propensity to commit a sex offense in the future. Dr. Clounch placed great weight on the defendant's sexual preference for children and his beliefs that supported or excused his sexual behavior. Dr. Clounch concluded that the defendant remained a sexually dangerous person.

¶ 21    The trial court noted that the defendant had made some progress while he was in

treatment, as he was in phase two of the treatment program, and his beliefs toward victim blaming started to improve. The court also recounted Dr. Clounch's testimony and the tools he used to assess the defendant's reoffend risk. The court then told the defendant that he needed to finish all four phases of his treatment program and participate, and then hopefully the assessment tools would result in his favor. The court denied the defendant's application for discharge or conditional release, finding that the State met its burden, by clear and convincing evidence, that the defendant remained a sexually dangerous person.

¶ 22        The defendant appeals.

¶ 23                                    ANALYSIS

¶ 24        On appeal, the defendant argues (1) the State failed to prove by clear and convincing evidence that he continued to be a sexually dangerous person and (2) the trial court denied his right to due process when it denied his request to appoint himself as an expert witness.

¶ 25        Any time after a defendant is committed under the SDP Act, he may file a recovery application alleging that he is no longer sexually dangerous and requesting a discharge or conditional release. 725 ILCS 205/9(a) (West 2016). The State must prove by clear and convincing evidence that the defendant remains sexually dangerous. 725 ILCS 205/9(b) (West 2016). At issue in the recovery proceeding is the defendant's current psychological condition and whether he is presently a sexually dangerous person within the meaning of the SDP Act. *People v. Grant*, 2016 IL App (5th) 130416-B, ¶ 8.

¶ 26        The decision of the trial court in such proceedings is reviewed under the manifest weight of the evidence standard. *People v. Donath*, 2013 IL App (3d) 120251, ¶ 38. A court's finding that a defendant remains a sexually dangerous person will be disturbed on review only where the opposite conclusion is clearly apparent. *Id.* We also note that the trier of fact is in the best

10

position to weigh the evidence and assess the credibility of the testimony and evidence presented. *In re Commitment of Fields*, 2012 IL App (1st) 112191, ¶ 62.

¶ 27 After reviewing the record, we find that the trial court's determination that the defendant remained a sexually dangerous person was not against the manifest weight of the evidence. Section 1.01 of the SDP Act defines "sexually dangerous persons" as:

> "All persons suffering from a mental disorder, which mental disorder has existed for a period of not less than one year, immediately prior to the filing of the petition hereinafter provided for, coupled with criminal propensities to the commission of sex offenses, and who have demonstrated propensities toward acts of sexual assault or acts of sexual molestation of children ***." 725 ILCS 205/1.01 (West 2016).

¶ 28 Additionally, a finding of sexual dangerousness under the SDP Act "must *** be accompanied by an explicit finding that it is 'substantially probable' the person subject to the commitment proceeding will engage in the commission of sex offenses in the future if not confined." *People v. Masterson*, 207 Ill. 2d 305, 330 (2003).

¶ 29 Here, the record supports the trial court's finding that the defendant remained a sexually dangerous person. Dr. Clounch testified that the defendant suffered from two mental disorders—specifically, pedophilic disorder and fetishistic disorder—that existed for a period of not less than one year. In fact, Dr. Clounch believed that the defendant had these disorders since at least his first arrest in 1981. His testimony also demonstrated that the defendant had criminal propensities to commit sexual offenses, as he had sexual contact with numerous children spanning over nearly three decades. Although we are evaluating the defendant's *current* psychological condition, his history is important because it shows a pattern of behavior, which is

11

supported by the defendant's own statements in his 2017 evaluation. Dr. Clounch also testified that the defendant's scores on the Static-99R and Stable-2007 showed that he remained at high risk to reoffend and he needed further inpatient treatment. Notably, the defendant was only in phase two of his treatment program when he voluntarily withdrew. Dr. Clounch testified at length that the defendant had not made sufficient progress in his sex offender treatment and his beliefs supported or excused his sexual behavior, making him more likely to reoffend in the future. Based on the evidence presented, the trial court's conclusion that the defendant remained a sexually dangerous person was not against the manifest weight of the evidence.

¶ 30        We also note that the defendant takes issue with Dr. Clounch's evaluation because Dr. Clounch did not use a penile plethysmorgraph (PPG) to assess his sexual arousal and he instead used the defendant's own statements to make this determination. During Dr. Clounch's testimony, he acknowledged that the PPG was one of the tools recommended for the treatment of pedophiles in certain circumstances, but he was not trained to use that tool. Nonetheless, the defendant's own statements in treatment and his beliefs demonstrated that children still sexually aroused him. Thus, Dr. Clounch's opinion was not unfounded.

¶ 31        Last, the defendant argues that the trial court violated his due process rights when it refused to appoint an expert, namely himself, on his own behalf. We note that the defendant acknowledges that a defendant in these circumstances is generally not entitled to an expert on his behalf. See *Burns*, 209 Ill. 2d 551. However, he states that there are exceptions and alludes that Dr. Clounch was biased, had no responsibility for treating him, and his 2014 and 2017 reports were similar. He argues that his own expert would have been able to explain why he had not committed a sexual offense while housed with males for ten years and what a favorable PPG might mean.

12

¶ 32    We emphasize that the defendant omits the fact that he asked the court to appoint *himself* as his own expert. The record is devoid of any proper qualifications, specifically training and education in the field of psychology, that the defendant would possess in order to explain why he had not committed a sexual offense while housed with males for ten years and what a favorable PPG might mean. This request also omits the fact that the defendant's history and own admissions demonstrate that he was sexually attracted to young males, not the adult males he was housed with. Nonetheless, there was no evidence of record that Dr. Clounch was unqualified or completed an improper evaluation that would require an additional expert opinion in this case.

CONCLUSION

¶ 33    For the foregoing reasons, the judgment of the circuit court of Kankakee County is affirmed. The State requested a $50 statutory assessment against the defendant as costs of this appeal. Because the law that supported that assessment was repealed as of July 1, 2019, we decline to impose that assessment. See Pub. Act 100-987, § 905-43 (eff. July 1, 2019) (repealing 55 ILCS 5/4-2002).

¶ 34    Affirmed.