NOTICE
Decision filed 10/15/24. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2024 IL App (5th) 210327-U

NO. 5-21-0327

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Petitioner-Appellee, | ) | Pulaski County. |
| | ) | |
| v. | ) | No. 98-CF-91 |
| | ) | |
| PHILLIP SHARP, | ) | Honorable |
| | ) | William J. Thurston, |
| Respondent-Appellant. | ) | Judge, presiding. |

JUSTICE BOIE delivered the judgment of the court.
Presiding Justice Vaughan and Justice Welch concurred in the judgment.

**ORDER**

¶ 1 *Held*: The trial court's finding that the respondent remained a sexually dangerous person under the Sexually Dangerous Persons Act was not against the manifest weight of the evidence.

¶ 2 In 2005, the respondent, Phillip Sharp, was adjudicated a sexually dangerous person (SDP) under the Sexually Dangerous Persons Act (Act) (725 ILCS 205/0.01 *et seq.* (West 2004)), and the trial court committed him to the custody of the Illinois Department of Corrections (IDOC) until such time as he was no longer an SDP. On October 9, 2014, the respondent filed an application for discharge or conditional release pursuant to section 9(a) of the Act (*id.* § 9(a)), alleging that he had recovered and was no longer an SDP. Following a bench trial on April 27, 2021, the trial court entered a written order denying the respondent's application. The respondent appeals, arguing that the trial court erred in denying his application for discharge or conditional release because its

1

finding that he is substantially probable to reoffend was against the manifest weight of the evidence. For the following reasons, we affirm the judgment of the trial court.

¶ 3                                    I. BACKGROUND

¶ 4      On September 11, 1998, the respondent was charged by information with four counts of aggravated criminal sexual assault against M.L., a minor, in violation of section 12-14(b)(1) of the Criminal Code of 1961 (Code) (Ill. Rev. Stat. 1986, ch. 38, ¶ 12-14(b)(1)). The State filed an amended information on September 7, 2001, bringing the same charges as the prior information, with additional language invoking an extended statute of limitations pursuant to section 3-6(d) of the Code (Ill. Rev. Stat. 1986, ch. 38, ¶ 3-6(d)). On October 30, 2002, the State filed a petition to proceed under the Act (725 ILCS 205/0.01 *et seq.* (West 2002)), enumerating the same four counts contained in the amended information. On August 31, 2005, a jury trial was held on the matter, and the jury returned a verdict finding the respondent to be an SDP. The trial court entered judgment on the verdict, and the respondent was committed to the custody of IDOC. On September 12, 2005, the respondent filed a notice of appeal in accordance with Illinois Supreme Court Rule 606 (eff. Dec. 1, 1999). On June 20, 2006, this court entered a summary order affirming the trial court's judgment. *People v. Sharp*, No. 5-05-0525, 365 Ill. App. 3d 1133 (2006) (table) (unpublished summary order under Illinois Supreme Court Rule 23(c)).

¶ 5      On October 9, 2014, the respondent filed an application alleging recovery and requesting the trial court enter an order of discharge or conditional release pursuant to section 9(a) of the Act.[1] 725 ILCS 205/9(a) (West 2012). The trial court appointed counsel to represent the respondent and

---

[1]The respondent had filed three previous applications. The first application was filed on August 6, 2007. Another application was filed on May 21, 2010, and an order, pursuant to the respondent's request, granting leave to withdraw application was entered on September 28, 2012. The third application was filed on July 5, 2013, and an order dismissing the application at the State's request was entered on March 21, 2014.

2

ordered a psychological evaluation. See *id*. On September 4, 2015, the Director of Corrections (Director) filed an SDP evaluation prepared by Dr. Melissa Weldon-Padera, Psy.D., who was a licensed clinical psychologist and sex offender evaluator. On March 17, 2017, the Director filed a second SDP evaluation prepared by Dr. Kristopher Clounch, Ph.D., who was a licensed clinical psychologist and sex offender evaluator. A jury trial on the respondent's application was held on April 24 and 25, 2017, and the jury found the respondent remained an SDP. On December 1, 2017, the respondent filed a motion for new trial, which was ultimately granted. Subsequent SDP evaluations completed by Dr. Clounch were filed with the trial court on July 23, 2019, and February 11, 2021.

¶ 6    On April 27, 2021, a bench trial was held. The State's only witness was Dr. Clounch, and defense counsel stipulated to Dr. Clounch's qualifications and as an expert in assessing individuals under the Act. Dr. Clounch testified that he was an employee of Wexford Health Services that contracts with the State of Illinois to perform SDP evaluations.

¶ 7    Dr. Clounch testified that in 2012, he was part of a three-person team that evaluated the respondent and recommended that he continue to stay within IDOC. In 2015, another evaluator was assigned to the respondent, and Dr. Clounch was reassigned to the respondent in 2017. Dr. Clounch interviewed the respondent in 2017, 2019, and 2021.

¶ 8    Dr. Clounch stated that his most recent interview with the respondent occurred on January 27, 2021, and lasted approximately 1 hour and 15 minutes. Dr. Clounch reviewed prior treatment records, criminal records, police reports, and court records from all the respondent's sex offender cases before the interview. Dr. Clounch conducted a risk assessment of the respondent and formed the opinion that the respondent remained an SDP. Dr. Clounch had diagnosed the respondent with pedophilic disorder, sexually attracted to males and females, nonexclusive. The SDP evaluation

3

prepared by Dr. Clounch was filed into the record pursuant to the Act and fully considered by the trial court. 725 ILCS 205/4.04 (West 2020).

¶ 9    Dr. Clounch's review of the prior records showed that the respondent was arrested in 1966 for an offense against his three-year-old niece, S.S. The charge was for indecent liberties with a child and indicated that the respondent touched and sexually penetrated S.S. while the victim was left in his care. The respondent caused serious injuries to the victim, who was hospitalized for four days. The respondent encouraged the victim to lie to medical staff about what caused her injuries. When the respondent saw the extent of the victim's injuries, he confessed his actions. He was committed as an SDP in 1966 and released with conditions in 1969, with conditions fully removed in 1970.

¶ 10   Dr. Clounch reviewed the respondent's 1996 case, where he was arrested for penetrating the anus of a family member, C.S. The victim was 13 years old, and the respondent was 48 years old. The respondent entered a guilty plea and was sentenced to four years' probation and ordered to participate in counseling for two years.

¶ 11   In the current case, Dr. Clounch stated that the respondent was charged with four counts of aggravated criminal sexual assault. The offenses occurred multiple times between 1987 to 1991, when the victim was between the ages of 6 and 10 and the respondent was between the ages of 39 through 43. The respondent lived in the victim's home, and she was left in his care when the respondent committed the sexual assaults. A jury found the respondent to be an SDP in 2005.

¶ 12   Dr. Clounch reviewed the respondent's past treatment and evaluation records. He focused on the admissions made by the respondent concerning his past offenses and/or other offenses involving sexual acts against children. Dr. Clounch explained that he did so because individuals in treatment often report more offenses than there are formally reported or charged. The respondent

4

reported varying numbers of victims at different points in his treatment history. The respondent reported that he had 5 sexual victims during his most recent 2021 interview; he reported 2 or 3 victims in his 2019 interview; he reported 10 victims in his 2017 interview; and during a group session in 2019, he reported 10 victims. The respondent provided details about the previously unknown offenses that he disclosed throughout his treatment. Many of the respondent's reported victims were offended upon multiple times. The respondent admitted that he gained access to the victims by befriending them or when they were left in his care.

¶ 13    The respondent's inconsistent reports regarding his sexual offenses were valuable to Dr. Clounch's evaluation. He explained that it is important, in evaluating a respondent, to ultimately judge his progress as he works through his offenses and offending history. An individual's inconsistency shows that the person is not being fully honest about their offending to themselves or to others.

¶ 14    Dr. Clounch diagnosed the respondent with pedophilic disorder by using the Diagnostic and Statistical Manual of Mental Disorders, Fifth Edition (DSM-5), which is a generally accepted method for reaching diagnoses. American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders, Fifth Edition, DSM-5 *Paraphilic Disorders* 685-705 (2013). Dr. Clounch testified that he diagnosed the respondent with pedophilic disorder because he (1) had recurrent sexual fantasies, urges, or behaviors involving children; (2) had acted upon these urges; and (3) was at least 16 at the time of these incidents and at least five years older than the children involved.

¶ 15    Dr. Clounch further opined that the respondent was likely to engage in sex offenses in the future. Dr. Clounch based his conclusion on two actuarial assessments (the Static-99R and STABLE-2007). Dr. Clounch explained that the Static-99R addresses statistical or historical

factors and the STABLE-2007 addresses dynamic risk factors. He also considered other dynamic risk factors and protective factors not included in those two measures but that have been found to be related to sexual recidivism for male offenders.

¶ 16    On the Static-99R, Dr. Clounch scored the respondent a 2, which placed him in the average category of risk for being charged with or convicted of another sexual offense. This meant that 40 of 100 sex offenders would score below him. Dr. Clounch stated that the respondent received a three-point reduction to his score based upon his age. According to Dr. Clounch, the Static-99R typically underestimates the risk of reoffending and did not adequately estimate the risk for the respondent on its own.

¶ 17    Dr. Clounch also utilized the STABLE-2007 assessment tool. Dr. Clounch explained that the STABLE-2007 is a 13-item measure addressing dynamic risk factors that are psychological meaningful traits that have been found to be related to sexual recidivism for adult male sex offenders. Dr Clounch scored the respondent an 18 out of 26 on the STABLE-2007, with a score of 12 or above being listed as a high level of stable dynamic risk and/or criminogenic needs. This score meant that 96 out of 100 sex offenders would score below him.

¶ 18    Dr. Clounch testified that, for purposes of determining recidivism, the Static-99R and STABLE-2007 are used in conjunction with one another to determine a relative risk ratio and provide an overall risk category for the respondent. When combining the respondent's score of 18 on the STABLE-2007, with a Static-99R score of 2, it placed the respondent in the "well-above average category" of level IVb. Offenders at this level had been found to reoffend at a rate of three to four times the rate of the average sex offender.

¶ 19    Dr. Clounch stated that the even combining the two assessment tools did not give a complete picture of a sexual offender's risk of reoffending. Dr. Clounch determined that three

other external, dynamic risk factors were present for the respondent, namely sexual preference for children, sexualized violence, and multiple paraphilias, which increased the respondent's overall risk level.

¶ 20    Dr. Clounch then considered three empirically researched protective factors that could reduce the risk of sexual offending, including (1) having been in the community sex-offense-free for a significant period of time, (2) less than 15 years left in offender's time at risk due to age or poor health, and (3) completion of a cognitive-behavioral sex offender treatment program. Dr. Clounch testified that advanced age was the only factor present for the respondent, which was accounted for by the three-point reduction in his Static-99R score.

¶ 21    Dr. Clounch opined that the respondent's health was not an impediment to his risk of reoffending. Dr. Clounch recognized that the respondent was being treated for several medical conditions, including high blood pressure, blood clots, and ultimately being confined to a wheelchair due to lower leg weakness resulting from deep vein thrombosis. Dr. Clounch did not believe that the respondent's health was an impediment to offending based on his choice of victims. Very young children did not require a great deal of physical exertion to offend, and the respondent had previously manipulated parents, allowing him to gain access to children.

¶ 22    Accordingly, Dr. Clounch testified that in the future, it was unlikely that the respondent being in a wheelchair would significantly reduce his risk to reoffend beyond his current risk associated with the reduction due to his age. Dr. Clounch rejected the respondent's assertion that he was fully paralyzed from the waist down in 2017. Dr. Clounch observed movement in the respondent's ankles and feet during the 2019 interview. Corrections officers had observed the respondent standing and walking in his cell. Additionally, a report indicated that the respondent had gotten into a fight with his cellmate in 2017. According to Dr. Clounch, the report indicated

that the respondent grabbed his cellmate around the throat, thereby showing aggression and the ability to defend himself and behave in such a manner.

¶ 23    Dr. Clounch noted that the respondent appeared to be able to care for himself and that his medical conditions were well managed on his medication. His current medical issues did not indicate any significant changes to his previously reported medical issues when he was still considered an SDP.

¶ 24    Further, Dr. Clounch did not believe that the respondent's sex offender treatment in his earlier cases effectively reduced his risk to reoffend. In the present case, the respondent had not displayed any significant progress in his treatment. Dr. Clounch stated that the respondent dropped out of treatment in 2017. Although the respondent restarted his treatment in 2020, treatment groups had been limited due to the Covid-19 pandemic and he had not completed any individual assignments or demonstrated progress.

¶ 25    During the interviews, the respondent was unable to articulate any strong understanding of his core beliefs supporting victimization of children, his high-risk situations, his cycle of offending, or any strategies to avoid reoffending. In his most recent evaluation before pandemic restrictions, the respondent was reported to still have difficulties in the majority of the assessment areas, including sexual interests, attitudes, and risk management. A therapist at the correctional facility reported to Dr. Clounch that the respondent had not demonstrated any identifiable progress over the last few years. Dr. Clounch's expert opinion, to a reasonable degree of psychological certainty, was that the respondent remains an SDP as defined in section 1.01 of the Act (725 ILCS 205/1.01 (West 2020)). Dr. Clounch opined that the respondent was substantially probable to commit future acts of sexual violence if not confined in a structured and secure environment and could not be safely discharged into the community.

¶ 26    On cross-examination, Dr. Clounch was questioned about the methods used for scoring on the actuarial measures and how he scored the respondent based on each element, as well as the external, dynamic risk factors considered. Dr. Clounch stated that he was given access to, and reviewed, the respondent's medical records in the current evaluation and prior evaluations but could not recall all the medical details from past reviews for the respondent. Dr. Clounch did not recall why the respondent was in a nursing home prior to being committed as an SDP in 2005. Dr. Clounch acknowledged that the respondent's medical conditions could cause weakness and pain in his extremities and that he reported being confined to a wheelchair due to being paralyzed from the waist down. Dr. Clounch opined, however, that the respondent being wheelchair bound did not reduce his risk to offend against young children. When questioned regarding whether the respondent's medications would impact sexual functioning, Dr. Clounch responded that he was unaware if any did, but opined that regardless of sexual side effects, many of the respondent's offenses did not involve his genitalia. The respondent, in fact, showed a predilection to touching the genitalia and placing his mouth on the vagina of female children.

¶ 27    The State presented no other witnesses or evidence and rested. The respondent presented no witnesses or testimony. At the conclusion of the testimony and arguments of counsel, the trial court ruled as follows:

"With respect to the health issues, and that is the main argument that the [respondent] is mounting, it goes right back to every single defendant has his own facts, his own limitations, his own history, his own actions.

[The respondent], the nature of the offenses that have been documented in the past, the age of the victims, just because there are health issues of the type of the record does not discount or minimize or eliminate the possibility of reoffending.

9

In the record, we have acts of digital penetration, oral sex. ***

\* \* \*

Court is going to find that the State has met their burden by clear and convincing evidence and overcome the presumption that [the respondent] is afforded by law and finds that he is a sexually dangerous person.

Court finds all four of those prongs have been met. And the Court will specifically find that it is substantially probable that the [respondent] would reengage in the commission of sex offenses if not confined."

The respondent filed a motion to reconsider on May 5, 2021, which was denied. This appeal followed.

¶ 28                                    II. ANALYSIS

¶ 29    On appeal, the respondent argues that the trial court erred by denying his application for discharge or conditional release. He contends the State's evidence did not support the trial court's finding, by clear and convincing evidence, that he remained an SDP. The respondent challenges only the trial court's finding that the respondent was substantially probable to reoffend. In doing so, he claims that the evidence was insufficient where the State's expert witness formed his opinion (1) with reliance on an actuarial measure that is not intended for use on persons who have been committed for a lengthy period of time, and (2) with inadequate investigation into the protective effect of the respondent's medical conditions and medications, and as such, lacked credibility.

¶ 30    Under section 9(a) of the Act (725 ILCS 205/9(a) (West 2020)), a respondent who has been found to be an SDP may submit an application to the trial court setting forth facts showing that he has recovered. Section 9(a) of the Act states:

"An application in writing setting forth facts showing that the sexually dangerous person or criminal sexual psychopathic person has recovered may be filed before the committing court. Upon receipt thereof, the clerk of the court shall cause a copy of the application to be sent to the Director of the Department of Corrections. The Director shall then cause to be prepared and sent to the court a socio-psychiatric report concerning the applicant. The report shall be prepared by an evaluator licensed under the Sex Offender Evaluation and Treatment Provider Act. The court shall set a date for the hearing upon the application and shall consider the report so prepared under the direction of the Director of the Department of Corrections and any other relevant information submitted by or on behalf of the applicant." *Id.*

¶ 31 Once the respondent files an application, the court must hold a hearing, and the State has the burden of proving by clear and convincing evidence that the respondent remains an SDP. *Id.* § 9(b); *People v. Hancock*, 2014 IL App (4th) 131069, ¶ 139. To find that a respondent remains an SDP, the trial court must find that (1) respondent suffers from a mental disorder existing for at least one year before the petition was filed, (2) the disorder is associated with criminal propensities to the commission of sexual offenses, (3) the respondent has demonstrated such a propensity, and (4) it is substantially probable that the respondent will commit future sex offenses if not confined. *People v. Donath*, 2013 IL App (3d) 120251, ¶ 37 (citing 725 ILCS 205/1.01 (West 2008)). At issue in a recovery hearing is the respondent's current psychological condition and whether he "is presently a sexually dangerous person within the meaning of the Act." *People v. Studdard*, 82 Ill. App. 3d 736, 740 (1980).

¶ 32 The trial court's finding that the respondent remains sexually dangerous may not be disturbed on review unless that decision is against the manifest weight of the evidence. *People v.*

11

*Houde*, 2019 IL App (3d) 180309, ¶ 26. A decision is against the manifest weight of the evidence only if an opposite conclusion is clearly apparent. *Id.* In recovery proceedings, it is the State's burden to prove, by clear and convincing evidence, that the defendant remains an SDP. 725 ILCS 205/9(b) (West 2020); *People v. Bailey*, 2015 IL App (3d) 140497, ¶ 12. The trier of fact is in the best position to weigh the evidence and assess the credibility of the testimony and evidence presented. *Houde*, 2019 IL App (3d) 180309, ¶ 26 (citing *In re Commitment of Fields*, 2012 IL App (1st) 112191, ¶ 62).

¶ 33    First, while the respondent mentions the State expert's use of an actuarial measure that is not intended for use on persons who have been committed for a lengthy period of time in the headings of both his brief and reply brief, the issue was not supported in either brief with argument, citation to the record or authorities. Illinois Supreme Court Rule 341(h)(7) (eff. Oct. 1, 2020) states that argument in the appellant's brief shall state the appellant's contentions "and the reasons therefor, with citation of the authorities ***." A reviewing court is not a repository into which an appellant may dump the burden of argument and research, and the failure to clearly define issues and support them with authority results in forfeiture of the argument. *People v. Olsson*, 2014 IL App (2d) 131217, ¶ 16. As the respondent has failed to clearly argue or cite relevant authority for this issue, it is forfeited for review.

¶ 34    We now turn to the respondent's argument that the State's evidence was insufficient to show that it was substantially probable that the respondent would commit future sex offenses if not confined. The respondent argues that Dr. Clounch's expert opinion on this issue was unreliable, where it was not supported by the "full panoply of the evidence available to him, had he just chosen to do the necessary research into [the respondent's] health conditions or medications and their side

effects." Further, the respondent notes that he has not reoffended since the 1998 charge, which occurred well before his commitment in 2005.

¶ 35    Here, the trial court's determination that the respondent remained an SDP was not against the manifest weight of the evidence. The State presented expert testimony the respondent had not made sufficient progress in treatment and that it was substantially probable that he would engage in the commission of sex offenses against children in the future if not confined. The State presented evidence of the respondent's mental disorder that has existed for more than a year, and that it is accompanied by criminal propensities to the commission of sex offenses. Dr. Clounch presented evidence that the respondent had not fully addressed his past offenses and had given conflicting accounts of the number of victims he had perpetrated and offenses he had committed in the past. Dr. Clounch further explained that he used actuarial assessment tools, the Static-99R and STABLE-2007, which indicated that the respondent maintained a high probability of reoffending. Dr. Clounch considered the potential protective factors that reduced the respondent's risk to reoffend. Dr. Clounch stated that only one protective factor applied to the respondent, his age, which resulted in a three-point reduction on the Static-99 score. Dr. Clounch acknowledged his awareness of issues relating to the respondent's physical health and potential side effects of his medication. Dr. Clounch could not recall, while testifying, the exact diagnosis which resulted in the respondent becoming dependent on a wheelchair or whether there may be medication that interfered with arousal. Dr. Clounch's evaluation included a review of the respondent's medical history, including the treatments and diagnoses causing him to become wheelchair dependent. Dr. Clounch opined that even with the respondent's known health conditions and any possible sexual side effects of medication, based on his preferred victims and methodologies, his physical limitations would not prohibit him from reoffending. Dr. Clounch affirmatively stated the reasons

13

why those limitations or side effects did not change his opinion that the respondent remained likely to reoffend.

¶ 36     The determination of the credibility of the witness was a matter for the trial court, and we will not second-guess that determination on appeal. Based on the evidence presented, we find nothing in the record that would indicate that the opposite conclusion is clearly apparent with regard to the trial court's determination that the respondent remained an SDP. Therefore, we find that the trial court's determination that the respondent remained an SDP was not against the manifest weight of the evidence.

¶ 37                                   III. CONCLUSION

¶ 38     For the foregoing reasons, the judgment of the trial court of Pulaski County is affirmed.

¶ 39     Affirmed.