NOTICE

Decision filed 10/30/24. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2024 IL App (5th) 220501-U

NO. 5-22-0501

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Jefferson County. |
| | ) | |
| v. | ) | No. 92-CF-129 |
| | ) | |
| CHARLES PETER ALLISON, | ) | Honorable |
| | ) | Jerry E. Crisel, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE BOIE delivered the judgment of the court.
Presiding Justice Vaughan and Justice Cates concurred in the judgment.

**ORDER**

¶ 1   *Held*: The evidence was sufficient to support the jury's finding that the defendant remained a sexually dangerous person under the Sexually Dangerous Persons Act, and therefore his application for recovery was properly denied.

¶ 2   In 1993, the defendant, Charles Peter Allison, was adjudicated a sexually dangerous person (SDP) under the Sexually Dangerous Persons Act (Act) (725 ILCS 205/0.01 *et seq.* (West 1992)), and the trial court committed him to the custody of the Illinois Department of Corrections (IDOC) under the guardianship of the Director of Corrections (Director) until such time as he was no longer an SDP. On September 26, 2019, the defendant filed an application for discharge or conditional release pursuant to section 9(a) of the Act (*id.* § 9(a)), alleging that he had recovered and was no longer an SDP. A jury trial was held from July 26, 2022, through July 28, 2022. The jury found that the defendant continued to be an SDP. The trial court entered a judgment on the verdict and

1

remanded the defendant to the custody of the Director. The defendant appeals, arguing that the evidence was insufficient to support the jury's verdict. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4    On September 25, 1992, the defendant was charged by information with aggravated criminal sexual abuse against a minor in violation of section 12-16(c)(1)(i) of the Criminal Code of 1961 (Code) (720 ILCS 5/12-16(c)(1)(i) (West 1992)). On November 20, 1992, the State filed a petition to proceed under the Act (725 ILCS 205/0.01 *et seq.* (West 1992)), enumerating the same count contained in the information. On March 1, 1993, a bench trial was held on the matter, and the trial court found the defendant to be an SDP. The trial court entered judgment on the verdict, and the defendant was committed to the custody of IDOC. On June 2, 1993, the defendant filed a notice of appeal in accordance with Illinois Supreme Court Rule 606 (eff. July 1, 1984). On July 29, 1997, this court entered an order affirming the trial court's judgment. *People v. Allison*, 294 Ill. App. 3d 1130 (1997) (table) (unpublished order under Illinois Supreme Court Rule 23).

¶ 5    On September 26, 2019, the defendant filed an application alleging recovery and requesting the trial court enter an order of discharge or conditional release pursuant to section 9(a) of the Act.[1] 725 ILCS 205/9(a) (West 2018). The trial court ordered a socio-psychiatric evaluation be prepared after an oral motion for discharge was made and on October 21, 2019, the Director filed a sexual dangerous persons act evaluation (evaluation) prepared by Dr. Kristopher Clounch, Ph.D., who was a licensed clinical psychologist and sex offender evaluator. A jury trial on the defendant's application was held on July 26-28, 2022, and the jury found that the defendant remained an SDP.

---

[1]The defendant has filed six previous applications, which were filed on the following dates: October 24, 1994; August 12, 1996; June 3, 2002; September 23, 2005; June 4, 2007; and March 23, 2011.

¶ 6 During the hearing, the State's sole witness was Dr. Clounch, and defense counsel stipulated to Dr. Clounch's qualifications as an expert in assessing individuals under the Act. Dr. Clounch testified that he was an employee of Wexford Health Services that contracts with the State of Illinois to perform sexually dangerous persons act evaluations.

¶ 7 Dr. Clounch testified that in 2012, he was part of a three-person team that evaluated the defendant and recommended that he continue to stay within IDOC. Dr. Clounch again interviewed the defendant in 2014, 2015, 2019, and 2021. Dr. Clounch stated that his most recent interview with the defendant occurred on August 25, 2021. Dr. Clounch reviewed prior treatment records, criminal records, police reports, and court records from all the defendant's sex offender cases before the interview. Dr. Clounch conducted a risk assessment of the defendant and formed the opinion that the defendant remained an SDP. Dr. Clounch had diagnosed the defendant with pedophilic disorder, sexually attracted to males, nonexclusive. The evaluation prepared by Dr. Clounch was filed prior to the hearing and admitted into evidence.

¶ 8 Dr. Clounch's evaluation contained the defendant's history of committing sexual offenses against children over a 32-year period. During the interview, the defendant acknowledged his record of offending against 13 adolescent female victims, and the defendant's criminal records showed that he had offended against at least 4 male children. The defendant reported that he first sexually offended against his four-year-old sister in 1956. The defendant continued sexually offending against minors for multiple decades, resulting in criminal charges in 1960, 1967, 1968, 1969, 1976, 1980, 1987, and 1992.

¶ 9 Dr. Clounch testified to the nature of each of these cases. In 1960, the defendant was charged with the rape of a six-year-old female and was sentenced to one year of court supervision and placed into custody within a home for emotionally disturbed children due to being a minor. In

3

1967, the defendant was stationed at Fort Sam Houston in San Antonio, Texas, and was arrested for indecent liberties with a child. The defendant never admitted to any sexual penetration, but stated that he had kissed the minor victim. After his discharge from the Army, the defendant reported that he moved to Chicago and became involved in an unlicensed youth shelter in 1967. He later admitted to sexually abusing multiple minor females while working with the shelter. He pled guilty and was sentenced to one year of supervision.

¶ 10    In 1968, police records show that the defendant was charged with indecent liberties with a child. The victim, a six-year-old boy, was forcibly taken by the defendant into a bathroom. The defendant placed the victim's penis in his mouth and then pulled down the victim's pants and placed his finger in the victim's anus. The defendant was convicted and sentenced to one year incarceration and five years' probation. The defendant was charged a second time in 1968 for indecent liberties with a child with a different victim. He was convicted and sentenced to one year incarceration. During his 2015 trial, the defendant admitted to touching both victims' penises; however, the defendant denied these actions during his present interview.

¶ 11    In 1969, the defendant was charged with indecent liberties with a child and contributing to the sexual delinquency of a child. The defendant had an 11-year-old male and a 16-year-old female in his apartment. He placed his penis between the legs of the female victim and put his mouth on her vagina, all within the presence of the male victim. The defendant was convicted and sentenced. In the present interview, the defendant stated that he had sexually penetrated the female victim and believed he was in a relationship with a 19-year-old, despite the victim actually being a minor. He pled guilty to indecent liberties with a child and was sentenced to four to eight years in IDOC. In 1976, while on mandatory supervised release for this case, the defendant was convicted of battery

after choking a woman and stated in an interview that he was initially charged with rape or attempted rape.

¶ 12   In 1980, the defendant was charged with indecent liberties with a child for touching an unrelated male child with sexual intent. The defendant denied ever touching the victim. He was convicted and sentenced to 10 years in IDOC and released on parole in 1986. In 1987, the defendant was charged with aggravated criminal sexual abuse for touching a five-year-old victim's penis and unlawful exhibition of harmful material for showing the victim pictures of naked children. The defendant denied any inappropriate sexual contact. He was found guilty by a jury on both counts and sentenced to three years in IDOC for aggravated criminal sexual abuse and six months in county jail for unlawful exhibition of harmful material.

¶ 13   In 1992, the defendant was charged with aggravated criminal sexual abuse for touching a six-year-old victim's penis. The defendant has told differing stories about the incident in interviews but denies any sexual intent. He admitted to touching the victim's penis on the outside of his clothing in the defendant's 1992, 2012, 2014, and 2019 interviews. The defendant stated in the present interview that the incident was fabricated in retaliation to a child neglect report made about the victim's mother by the defendant's girlfriend.

¶ 14   During the present interview, the defendant denied any male victims. Dr. Clounch testified that denying victims is important to progress in treatment. By not discussing the victims in treatment, an SDP program participant cannot understand what led to the offense, understand the fantasies and urges with respect to children, and has not determined any interventions or tools to use in the future to avoid offending.

¶ 15   Dr. Clounch diagnosed the defendant with pedophilic disorder by using the Diagnostic and Statistical Manual of Mental Disorders (DSM-5), (American Psychiatric Association, Diagnostic

and Statistical Manual of Mental Disorders, 5th Edition, DSM-5 (2013)), which is a generally accepted method for reaching diagnoses. Dr. Clounch testified that he diagnosed the defendant with pedophilic disorder because he (1) had recurrent sexual fantasies, urges, or behaviors involving children, (2) had acted upon these urges, and (3) was at least 16 at the time of these incidents and at least five years older than the children involved.

¶ 16     Dr. Clounch's evaluation also included the defendant's disciplinary history while in IDOC. Correctional staff found cutouts of adolescent children under the defendant's mattress in 2012, which resulted in an institutional violation. The defendant reported that those pictures were for sexual purposes. He also incurred an SDP program ticket in 2015 for possession of pornography because he had a picture of a small boy hidden in his bible with the intent to use it as a masturbation aid. The defendant, however, denied any violations for sexual misconduct in the present interview.

¶ 17     Dr. Clounch testified and reported that the defendant had not completed SDP programs designed to aid recovery. He was removed from two groups, anger management and rational emotive behavioral therapy, due to missing too many group sessions. The defendant withdrew from treatment in 2018 and signed back into treatment in 2020. Due to the Covid-19 pandemic, program participants had to complete homework assignments. Dr. Clounch was given four homework assignments from the defendant: two were completed and two were not fully completed. The defendant also participated in the Conquer Series, which is a Christian-related program. This program, however, teaches things that counter the therapy practices and SDP treatment, which has been shown by research to reduce the risk to reoffend in the future. Dr. Clounch stated that the defendant did not actively participate during SDP group sessions. Dr. Clounch also stated that the defendant had previously admitted to having male victims in 2015,

but presently denied the offenses against male victims and had a tendency to minimize his responsibility with other victims.

¶ 18    Dr. Clounch opined that the defendant was likely to engage in sex offenses in the future. Dr. Clounch based his conclusion on two actuarial assessments—the Static-99R and STABLE-2007. He also considered other dynamic risk factors and protective factors not included in those two measures that have been found to be related to sexual recidivism for male offenders.

¶ 19    Dr. Clounch assessed the defendant utilizing the Static-99R assessment tool, which is a 10-item measure addressing static or historical factors. Dr. Clounch scored the defendant a 6, which placed him in the well above average category of risk for being charged with or convicted of another sexual offense. A score of 6 placed the defendant in the 94th percentile of routine samples of adult sexual offenders and meant that 92 of 100 sex offenders would score below him.

¶ 20    Dr. Clounch also utilized the STABLE-2007 assessment tool. Dr. Clounch explained that the STABLE-2007 is a 13-item measure addressing dynamic risk factors that are psychological meaningful traits that have been found to be related to sexual recidivism for adult male sex offenders. Dr Clounch scored the defendant a 16 out of 26 on the STABLE-2007, which placed him at a high level of stable dynamic risk and/or criminogenic needs. A score of 16 placed the defendant in the 93.9th percentile of adult male sex offenders in the instrument's standardization sample and meant that 93 out of 100 sex offenders would score below him.

¶ 21    Dr. Clounch testified that, for purposes of determining recidivism, the Static-99R and STABLE-2007 are used in conjunction with one another to determine a relative risk ratio and provide an overall risk category for the defendant. When combining the defendant's score of 6 on the Static-99R, with a STABLE-2007 score of 16, it placed the defendant in the "well-above

average category" of level IVb. Offenders at this level had been found to reoffend at a rate of three to four times the rate of the average sex offender.

¶ 22    Dr. Clounch stated that even combining the two assessment tools did not give a complete picture of a sexual offender's risk of reoffending. Dr. Clounch determined that two other external, dynamic risk factors were present for the defendant, namely sexual preference for children and offense supported attitudes and/or beliefs, which increased the defendant's overall risk level.

¶ 23    Dr. Clounch then considered three empirically researched protective factors that could reduce the risk of sexual offending, including (1) advanced age or significant health decline, (2) completing or making significant progress in sex offender specific treatment program, and (3) time spent in the community for an extended period of time without reoffending. Dr. Clounch testified that advanced age was the only factor present for the defendant, which was accounted for by a three-point reduction in his Static-99R score.

¶ 24    Dr. Clounch did not believe that the defendant's health or age were an impediment to offending based on his choice of victims, since very young children did not require a great deal of physical exertion to offend. Further, Dr. Clounch did not believe that the defendant's sex offender treatment effectively reduced his risk to reoffend.

¶ 25    Dr. Clounch's expert opinion, to a reasonable degree of psychological certainty, was that the defendant remains an SDP as defined in section 1.01 of the Act (725 ILCS 205/1.01 (West 2020)). Dr. Clounch opined that the defendant was substantially probable to commit future acts of sexual violence if not confined in a structured and secure environment and could not be safely discharged into the community.

¶ 26    On cross-examination, Dr. Clounch was questioned about each of the defendant's cases. He explained which records he reviewed and which offenses the defendant took responsibility for

8

committing. Dr. Clounch could not recall, or did not have access to, all the records detailing whether the defendant pled guilty or was found guilty in some of his cases. Dr. Clounch was further questioned about the treatment programs available to sex offenders, and the defendant's participation in those programs. Dr. Clounch explained the methods used for scoring on the actuarial measures and how he scored the defendant based on each element, as well as the external, dynamic risk factors considered.

¶ 27 The State presented no other witnesses or evidence and rested. The defendant presented no witnesses or other evidence. At the conclusion of the testimony and arguments of counsel, the jury deliberated and found that the defendant remained an SDP. The trial court entered an order the same day finding that the State had disproved the allegations of the defendant's application by clear and convincing evidence, that the defendant had not recovered, and that the defendant remained an SDP. This appeal followed.

¶ 28                                          II. ANALYSIS

¶ 29 On appeal, the defendant argues that the State failed to provide clear and convincing evidence that he remained an SDP. The defendant challenges only the jury's finding that the defendant was substantially probable to reoffend. In doing so, he claims that the evidence was insufficient where the State's expert witness lacked credibility as his testimony is contradicted by the record, and made incorrect assumptions based on missing original records.

¶ 30 A defendant is an SDP if he has (1) a mental disorder existing for at least one year before the petition was filed, (2) criminal propensities to the commission of sex offenses, and (3) demonstrated propensities toward acts of sexual assault or sexual molestation of children. 725 ILCS 205/1.01 (West 2020); *People v. Holmes*, 2016 IL App (1st) 132357, ¶ 103. " '[C]riminal propensities to the commission of sex offenses' means that it is substantially probable that the

9

person subject to the commitment proceeding will engage in the commission of sex offenses in the future if not confined." 725 ILCS 205/4.05 (West 2020).

¶ 31    The jury's finding that the defendant remains sexually dangerous may not be disturbed on review unless that decision is against the manifest weight of the evidence. *People v. Houde*, 2019 IL App (3d) 180309, ¶ 26. A decision is against the manifest weight of the evidence only if an opposite conclusion is clearly apparent. *Id.* In recovery proceedings, it is the State's burden to prove, by clear and convincing evidence, that the defendant remains an SDP. 725 ILCS 205/9(b) (West 2020); *People v. Bailey*, 2015 IL App (3d) 140497, ¶ 12. The trier of fact is in the best position to weigh the evidence and assess the credibility of the testimony and evidence presented. *Houde*, 2019 IL App (3d) 180309, ¶ 26 (citing *In re Commitment of Fields*, 2012 IL App (1st) 112191, ¶ 62).

¶ 32    We note that the State, along with stating the manifest weight of the evidence standard, asserts that:

> "On appeal from a jury's finding that a respondent is or remains a sexually dangerous person, 'the reviewing court must consider all of the evidence introduced at trial in the light most favorable to the State and then determine whether any rational trier of fact could have found the essential elements to be proven beyond a reasonable doubt.' *People v. Bailey*, 405 Ill. App. 3d 154, 171 (3d Dist. 2010) (citing *People v. Trainor*, 337 Ill. App. 3d 788, 793 (3d Dist. 2003))."

¶ 33    As the court explained in *People v. Hall*, 2017 IL App (3d) 160541, ¶¶ 41-43, the legislature amended the Act in 2006 (Pub. Act 94-404, § 5 (eff. Jan. 1, 2006)) to require the State to prove that an applicant in a recovery proceeding was still sexually dangerous by clear and convincing evidence. The *Bailey* case (405 Ill. App. 3d at 171), cited by the State, cited the *Trainor*

10

case (337 Ill. App. 3d at 793), which was decided prior to the legislature's amendment of the Act. As such, the standard of review put forth in *Trainor* is no longer applicable with regard to the burden of proof and the proper standard of review is whether the sexually dangerous determination was against the manifest weight of the evidence. *Hall*, 2017 IL App (3d) 160541, ¶ 43; *People v. Donath*, 2013 IL App (3d) 120251, ¶ 38. Under that standard of review, we will proceed to the defendant's issue on appeal.

¶ 34 The defendant argues that the State's evidence was insufficient because he had previously admitted to abusing his male victims in a 1980 presentence investigation report and during his 2015 trial, and thus, the record rebuts Dr. Clounch's opinion that the defendant did not take responsibility for his male victims. A recovery hearing, however, focuses on whether the defendant is *presently* an SDP within the meaning of the Act (*People v. Studdard*, 82 Ill. App. 3d 736, 740 (1980)), and Dr. Clounch utilized his most recent interview with the defendant to form his opinion. The defendant further states that Dr. Clounch could not accurately recall if the defendant pled guilty or was found guilty in some of his cases, which would affect whether the defendant took responsibility for his offenses against his male victims. Whether or not he pled guilty years prior and admitted to having male victims previously, however, does not negate the fact that he currently denies these victims, which Dr. Clounch explained was important to the defendant's recovery.

¶ 35 The State presented expert testimony that the defendant had not fully addressed his past offenses and, in his most recent interview, denied offending against male victims. Dr. Clounch explained the importance of recognizing victims in the treatment process, and that the defendant's failure to do so contributed to his finding that the defendant remained an SDP. Dr. Clounch further explained that he used actuarial assessment tools, the Static-99R and STABLE-2007, which indicated that the defendant maintained a high probability of reoffending. Dr. Clounch considered

11

the potential protective factors that reduced the defendant's risk to reoffend. Dr. Clounch stated that only one protective factor applied to the defendant, his age, which resulted in a three-point reduction on the Static-99 score.

¶ 36 Dr. Clounch testified that his review of the defendant's records, treatment progress, history, and risk assessment scores led him to opine that the defendant had not made sufficient progress in treatment and that it was substantially probable that he would engage in the commission of sex offenses against children in the future if not confined. The defendant argues, however, that Dr. Clounch did not have sufficient records to rely upon when determining the relevant facts of each offense. According to the defendant's argument, Dr. Clounch instead assumed facts that were not available to him and used those assumptions to inform his overall opinion of the defendant's likelihood to reoffend, including assumptions of the gender of his victims. Specifically, the defendant states that Dr. Clounch did not review the original reports or documents in some of the defendant's cases and, instead, relied upon reporting from other agencies or evaluators involved in the cases.

¶ 37 During the hearing, Dr. Clounch explained the types of records and reports he utilized to review each of the defendant's cases. Dr. Clounch testified that he relied upon PSI reports, charging documents, police reports, medical reports, criminal history information, and self-reported information from the defendant for these cases. The jury heard the expert's process when evaluating the defendant and the records he relied upon in formulating his opinion. The jury also heard the closing argument of the defense who stressed that Dr. Clounch's opinions were based on reports that he had read but were written by somebody else.

¶ 38 The report prepared by Dr. Clounch is required under the Act. 725 ILCS 205/9 (West 2018). This requirement is a statutory exception to the hearsay rule which reasons that the report

12

has inherent guarantees of trustworthiness in the number and professional character of the persons involved in making the report. *People v. Craig*, 2020 IL App (5th) 190162-U, ¶ 27 (citing *People v. Sweeney*, 114 Ill. App. 2d 81 (1969)). The findings and opinions of the professionals, particularly those who have been in close contact with the defendant, are invaluable when an expert completes the report. *Id*. Dr. Clounch appropriately relied upon the reports from other parties and experts while evaluating the defendant. Despite knowing Dr. Clounch did not have the original records for each of the defendant's criminal cases when evaluating the defendant, the jury found that the defendant had not recovered and remained an SDP. Additionally, Dr. Clounch utilized various records and methodologies, in addition to the reports written by other parties, in forming his opinion that the defendant remained an SDP.

¶ 39     The determination of the credibility of the witness and weight of his testimony presented were matters for the jury, and we will not second-guess that determination on appeal. Based on the evidence presented, we find nothing in the record that would indicate that the opposite conclusion is clearly apparent with regard to the jury's determination that the defendant remained an SDP. Therefore, we find that the jury's determination that the defendant remained an SDP was not against the manifest weight of the evidence.

¶ 40                                    III. CONCLUSION

¶ 41     For the foregoing reasons, the judgment of the trial court of Jefferson County is affirmed.

¶ 42     Affirmed.

13