2019 IL App (2d) 180653-U
No. 2-18-0653
Order filed November 19, 2019

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Ogle County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 95-CM-250 |
| DAVID H. TWINING, | ) ) ) | Honorable Robert T. Hanson, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE McLAREN delivered the judgment of the court.
Presiding Justice Birkett and Justice Bridges concurred in the judgment.

**ORDER**

¶ 1   *Held*: (1) Issue regarding alleged error in verdict form was forfeited where defendant failed to object to verdict form and to offer an alternative form; (2) there was no plain error that would excuse defendant's procedural default; (3) defendant did not receive ineffective assistance of counsel; and (4) cause remanded for findings as to why the trial court deemed that defendant's motion for Judicial Review of Treatment was withdrawn.   Trial court affirmed in part, cause remanded.

¶ 2   Defendant, David H. Twining, appeals from the jury verdict that he remains a sexually dangerous person under sections 9 and 10 of the Sexually Dangerous Persons Act (Act) (725 ILCS 205/9, 10 (West 2016)) and from the disposition of his *pro se* motion for judicial review of care and treatment pursuant to section 8 of the Act (*id.* § 8).   We affirm in part and remand.

¶ 3                                I. BACKGROUND

¶ 4     Following a 1995 bench trial, defendant was adjudicated a sexually dangerous person (SDP) and committed to the custody of the Department of Corrections (DOC) for treatment. This court affirmed the judgment in *People v. Twining*, 292 Ill. App. 3d 1126 (1997) (table) (unpublished order under Illinois Supreme Court Rule 23). In May 2002, defendant filed an "application showing recovery," seeking a hearing and release from custody. Following a bench trial in November 2002, the trial court found that defendant no longer appeared to be dangerous but that under conditions of institutional care it was impossible to determine with certainty that he had fully recovered. The court ordered defendant's conditional release.

¶ 5     In 2005 and 2009, the State filed various petitions to revoke defendant's conditional release, but defendant remained on conditional release. In 2010, defendant was convicted in Cook County of failing to register a change of address as a sex offender and sentenced to five years in DOC. The State withdrew its pending petition to revoke defendant's conditional release, and defendant remained on conditional release in the SDP case.

¶ 6     Upon defendant's 2012 release from DOC on the Cook County conviction, the State filed a new petition to revoke defendant's conditional release, alleging multiple violations of the terms of his release. On April 12, 2013, defendant waived his right to a hearing and admitted the allegations of the petition. The trial court found that defendant had violated the terms of his conditional release by drinking alcohol, using illegal drugs, failing to maintain full-time employment, and failing to cooperate with his sex-offender counseling. The court revoked defendant's conditional release and remanded him to DOC.

¶ 7     In May 2016, defendant filed an application for discharge or conditional release pursuant to the Act and a motion for the appointment of an independent evaluator. He also filed a motion

for judicial review of care and treatment under section 8 of the Act, alleging that DOC "has not provided [t]reatment that is designed to effect [r]ecovery." Among other forms of relief, defendant asked that the trial court rescind its order adjudicating defendant as an SDP, quash all outstanding informations and indictments, and discharge him from the custody of DOC.

¶ 8 The matter proceeded to a jury trial in July 2018. The State presented the testimony of Dr. Kristopher Clounch, the "sexually dangerous person psychologist" with Wexford Health Sources, which has contracts with DOC to provide mental and medical health services for inmates and to complete SDP recovery evaluations. His primary responsibility at Wexford was "to provide an unbiased assessment of the individual's progress and recovery thus far in the period of time that they've been committed as a sexually dangerous person." The trial court found Clounch to be an expert in the field of clinical psychology and specifically in the field of evaluation and risk assessment of sex offenders.

¶ 9 Clounch explained that, in making an assessment, he reviews the records relating to the defendant's criminal history, treatment, and prior evaluations. He also interviews the defendant. In this case, he reviewed "as many records as were available," as defendant's criminal history "does date back an extended period of time." He also interviewed defendant for almost three hours. Clounch completed his evaluation in September 2016 and an addendum in April 2018.

¶ 10 Clounch agreed that he considers the facts and circumstances of a defendant's offenses in forming his opinion regarding a sexually dangerous person. The State then elicited the facts and circumstances of defendant's criminal history, from 1965 through 2009, including statements defendant made about his offenses. Considering such information was "an accepted practice by experts" in the field. Defendant's criminal activities included kidnapping, forced sexual intercourse, threatening and obscene telephone calls, public indecency, indecent solicitation of a

child, exposing himself, burglary, false imprisonment, attempted rape, enticing a child for immoral purposes, battery, lewd and lascivious behavior, deviate sexual assault, rape, and harassment by telephone. Clounch provided facts underlying each of defendant's criminal activities.

¶ 11　Clounch also considered and testified about defendant's time in prison and treatment along with his time on conditional release. The State had attempted to revoke defendant's conditional release for various behaviors and infractions, including using alcohol, marijuana, and cocaine and having sexual contact with prostitutes.

¶ 12　Clounch described the methods he used to diagnose defendant's sexual disorders, which he testified were: other specified paraphilic disorder, nonconsenting parties; exhibitionistic disorder, in a controlled environment; and other specified paraphilic disorder, telephone scatologia, or making obscene telephone calls. He testified to which of defendant's criminal activities were related to each of these diagnoses, again describing some of the factual bases of the events. In Clounch's opinion, defendant's mental disorders affected his emotional or volitional capacity and predisposed him to commit sex offenses.

¶ 13　Clounch also assessed defendant's risk of committing a sex offense in the future, and he described his assessment in detail. Defendant's score placed him in the "well above average category for risk." Clounch described various psychological tests and the scoring involved, he noted defendant's sexual contact with prostitutes, and he described various sexual fantasies that defendant had related to him, including the stalking and rape of a local news personality. Again, Clounch described certain facts from defendant's criminal history as they related to specific tests and findings.

¶ 14　Clounch testified that defendant had not been arrested for any sexual offenses while on conditional release. However, he also noted that defendant had paid prostitutes for sexual contact

during that period that and the Static-99R test, which Clounch used in his evaluation, considered hiring a prostitute to be a sex offense as long as the individual has committed other sex offenses.

¶ 15    Ultimately, Clounch opined that, to a reasonable degree of psychological certainty, it was substantially probable that defendant would engage in future acts of sexual violence if not confined and defendant thus was still an SDP.   In addition, defendant had not recovered sufficiently to be placed on conditional release.

¶ 16    Defendant presented the testimony of Dr. Robert Meyer, a clinical psychologist whom the trial court found to be an expert in the field of clinical and forensic psychology, specifically in the field of evaluation and risk assessment of sex offenders.   Meyer prepared a sex-offender evaluation of defendant in 2017.   He diagnosed defendant as having antisocial personality disorder, which manifests in impulsiveness, aggression, and failure to consider the rights of others. He also diagnosed defendant with a paraphilia relating to his making obscene telephone calls.

¶ 17    Meyer noted that, while defendant was on conditional release, he was not arrested for any sex offenses.   However, defendant hired prostitutes on occasion, and he could have been arrested for doing so.   This was a risk factor, but it did not "fit that pattern of that violent offense that got him in so much trouble."   On cross-examination, Meyer admitted that many of the tests used in his evaluation considered hiring a prostitute to be a sex offense.

¶ 18    Meyer described the tests that he used in his risk assessment of defendant.   According to the Static-99R, defendant was an "above average to well above average" risk.   Meyer also described defendant as "high risk."   However, after concluding his assessment, he opined that defendant had a "less than five percent" probability of engaging in future sex offenses. Defendant's age and physical health "confirm that."   He described defendant as "essentially

impotent" and noted various other infirmities, including diabetes, emphysema, and being wheelchair-bound.

¶ 19    Meyer described defendant as having insight into what drove him to commit sex offenses:

"[H]e was very clear that they were driven by the desire, what got him off, so to speak, was the humiliation and degradation of women, to put them down, his anger at never being loved, by being humiliated by woman [*sic*].   He had a real drive to get back at that.   He did not cope with that well.   He made a number of poor choices."

According to Meyer, defendant took responsibility for his actions and said that what he did was wrong and deserved punishment.

¶ 20    Based upon his evaluation and risk assessment and his education, experience, and training, Meyer opined that, to a reasonable degree of psychological certainty, defendant did not meet the criteria of an SDP and "it's much more likely that he will not than [that] he will commit another sex offense in the remaining life— in his remaining lifetime."   He would "strongly recommend" conditional release.

¶ 21    Defendant did not testify.

¶ 22    After deliberating, the jury returned a verdict finding that defendant "is still a sexually dangerous person."   At defendant's request, the jurors were polled; each replied affirmatively to the question "was this then and is this now your verdict?"   The State prepared an order, which the court entered.   In addition to recording the verdict, the order stated, among other things, that "Respondent withdraws motion for Judicial Review of treatment."   This appeal followed.

¶ 23                                II. ANALYSIS

¶ 24    Defendant first contends that the jury's verdict did not comply with the supreme court's requirement, set forth in *People v. Masterson*, 207 Ill, 2d 305, 330 (2003), that a finding of sexual

dangerousness premised on section 1.01 of the Act (725 ILCS 205/1.01 (West 2016)) must "be accompanied by an explicit finding that it is 'substantially probable' the person subject to the commitment proceeding will engage in the commission of sex offenses in the future if not confined." The verdict returned by the jury read "We, the jury, find that the Respondent, David Twining, is still a sexually dangerous person."

¶ 25    We first note that defendant neither objected to the verdict form, which was submitted by the State, nor offered an alternative verdict form that would have remedied the alleged error. In general, the trial court is not obligated to give instructions or rewrite instructions given by counsel, and a party may not raise on appeal the court's failure to give an instruction unless he has tendered it. *People v. Parker*, 223 Ill. 2d 494, 507-08 (2006). A defendant forfeits any jury-instruction issue by affirmatively agreeing to instructions as submitted to the jury. *Id*. at 507.

¶ 26    Defendant submits that, as a respondent in an SDP proceeding, he "is simply not able to waive a requirement imposed by the Illinois Supreme Court." We agree with defendant. However, he *is* able to forfeit an issue on appeal by failing to properly preserve it, and that is what has happened here.

¶ 27    Even if we were to review this issue for plain error, which defendant has not asked us to do, we would not grant defendant a new trial. In a plain-error review, the burden is on the defendant to show error. *People v. McLaurin*, 235 Ill. 2d 478, 495-96 (2009). Here, while the verdict form did not reference in any way a finding that it is substantially probable that defendant will commit sex offenses in the future if not confined, the jury was clearly instructed that such a finding was required in order to find defendant to be an SDP. The instruction defining the term "sexually dangerous person" included the requirement of a substantial probability of future sex offenses, and the fourth proposition to be proved in the issues instruction read: "That it is

substantially probable that Respondent will engage in the commission of sex offenses in the future if not confined." If the jury found that "any one" of the propositions was not proven, the jury was instructed to "find that the Respondent is not a sexually dangerous person." Thus, the jury was clearly instructed that a substantial probability of future sex offenses must have been proved in order to find that defendant remained an SDP.

> "A defendant and a reviewing court will know whether the jury knew it was required to find this element of sexual dangerousness by looking at the jury instructions. In this case, the jury was properly instructed it had to determine it was a substantial probability defendant would reoffend in the future if released before it could find he continued to be sexually dangerous. As a result, we find no need to expand the supreme court's bench trial requirement to a jury trial on a defendant's recovery petition if the jury has been properly instructed on this point of law." *People v. Kallal*, 2019 IL App (4th) 180099, ¶ 50.

Further, Clounch clearly testified to his opinion that, based on a reasonable degree of psychological certainty, it was substantially probable that defendant would commit sex offenses in the future if not confined and defendant thus was still an SDP. In light of the clear instruction to the jury and the evidence supporting the substantial-probability finding, we find no error, let alone plain error. Thus, even under that analysis, there would be no basis to excuse defendant's procedural default.

¶ 28 Defendant next contends that he received ineffective assistance of counsel throughout the proceedings, both before and during the trial. We review claims of ineffective assistance of counsel according to the two-pronged test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *People v. Lawton*, 212 Ill. 2d 285, 302 (2004). Under this test, a defendant must prove both that defense counsel's performance fell below an objective standard of reasonableness and

that this substandard performance caused prejudice by creating a reasonable probability that, but for counsel's errors, the trial result would have been different.    *Id.*

¶ 29    Defendant first complains that counsel failed to object to certain paragraphs in the State's motion *in limine* seeking to prohibit testimony regarding the effectiveness of sex-offender treatment plans, the competency of treatment staff, or the quality of treatment provided at or by DOC.    As defendant states, these issues were raised in his motion for judicial review of care and treatment; they were not at issue in defendant's application for discharge or conditional release. However, the motion for judicial review was never heard or addressed; after the jury returned its verdict that defendant remained an SDP, the trial court entered an order noting, among other things, that "Respondent withdraws motion for Judicial Review of Treatment."    While defendant contests the propriety of this order (see *infra* ¶¶ 37-38), it is clear that defendant's motion was the proper vehicle for these issues; thus, defendant was not prejudiced by counsel's failure to object to the paragraphs of the motion *in limine*.

¶ 30    Defendant next argues that counsel was ineffective for failing to file a motion *in limine* seeking "to reduce the possibility that the State would sensationalize his criminal history."    In addition, he argues that counsel failed to object when Clounch "recited, in almost exquisite detail, Respondent's actions underlying his criminal convictions, his fantasies, his rationales, dating all the way back to 1965."    Defendant also notes that counsel did not object when the State referenced this information in its opening statement and closing argument.

¶ 31    While acknowledging that evidence of sex-offense convictions is relevant to demonstrating a defendant's propensity to commit sex offenses and the existence of a disorder for more than one year (both factors to be proved in an SDP proceeding (see 725 ILCS 205/1.01 (West 2016))), defendant asserts that most of his convictions would have been "properly proven *** by the use

of certified copies" of the convictions. This assertion is true as to the substantive use of criminal convictions to prove propensity of the existence of a disorder. See *Lawton*, 212 Ill. 2d at 303-04; *In re Detention of Hunter*, 2013 IL App (4th) 120299, ¶ 46. The State here did introduce one certified copy of a conviction. However, the complained-of recitation of defendant's actions underlying his convictions was not introduced as substantive evidence for the purpose of demonstrating propensity or the existence of a disorder. This information was elicited from Clounch for the purpose of explaining the basis for his opinion that defendant remained an SDP.

¶ 32     An expert may disclose the facts and conclusions underlying his opinion for the limited purpose of explaining the basis for the opinion. *Hunter*, 2013 IL App (4th) 120299, ¶ 32.

> "The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence." Ill. R. Evid. 703 (eff. Jan. 1, 2011).

An expert's testimony is judged by the same rules of weight and credibility as any other witness's, and the weight of his testimony largely depends on the foundation of fact and reason that forms the basis of his opinion. *Hegener v. Board of Education of the City of Chicago*, 208 Ill. App. 3d 701, 734 (1991). An opinion that is based on assumed facts that are not borne out by the evidence is entitled to limited weight. *Id*.

¶ 33     Clounch specifically testified that in forming his opinion he relied on his review of the facts and circumstances of the offenses. This information, along with descriptions of defendant's sexual fantasies, supported Clounch's opinions regarding defendant's multiple disorders, his

scores on the various risk-assessment tests (such as the Static-99R), and, ultimately his risk of committing future sex offenses and his status as an SDP.

¶ 34    Further, our review of the claimed "sheer deluge of prejudicial evidence" reveals that Clounch's testimony, while graphic, was not such that its prejudicial impact outweighed its probative value.    While the list of crimes was extensive, and some descriptions involved violent or disturbing actions, much of the testimony involved only listing charges and legal outcomes and did not include any more detail than a factual basis given before the entry of a plea of guilty.    We conclude that defense counsel was not ineffective for failing to object to this testimony.

¶ 35    Defendant also disputes counsel's effectiveness as it relates to Clounch's testimony about a 1988 offense that did not result in a conviction.    Clounch testified that defendant had been charged with aggravated battery, aggravated criminal sexual abuse, home invasion, and armed violence in relation to the attempted rape of an adult female.    The extent of Clounch's discussion regarding this incident is as follows:

> "The Court records indicate that the charges were for Mr. Twining entering the victim's residence, having a knife.    He threatened her with the knife.    He cut her on her hand and leg and grabbed her breast."

Clounch then noted that defendant was found not guilty of all charges.    On cross-examination, Clounch admitted that he did not rely on that case in forming his opinion.    Defense counsel asked that Clounch's testimony regarding that case be stricken and not considered by the jury, as he did not rely on it in forming his opinion.    The trial court responded, "I think at this time that's what he has stated, that he did not rely upon that in his opinion."

¶ 36    Defendant first argues that the trial court rejected his request to strike the testimony. While the trial court's response is less than clear, we do not see it as a rejection.    It reads more as

an agreement, that it should be stricken because "at this time that's what he has stated, that he did not rely upon that in his opinion." Although the trial court failed to instruct the jury to disregard the testimony, we do not find this to be reversible error. The testimony was short and not detailed, and defendant's acquittal was acknowledged. Counsel did not fail to object to this testimony and was, therefore, not deficient, and defendant was not prejudiced in any event.

¶ 37 In this same vein, defendant alleges counsel's ineffectiveness for failing to challenge Clounch's "repeated statements" regarding defendant's admitted hiring of prostitutes while on conditional release and Clounch's "injection of his personal opinion as to what constitutes a criminal offense." We disagree. Clounch referenced defendant's hiring of prostitutes as it affected the State's prior attempts to revoke defendant's conditional release, and he also noted that the Static-99R considered hiring a prostitute to be a sex offense as long as the individual has committed other sex offenses. Defendant's own expert, Meyer, testified that defendant could have been arrested for hiring prostitutes during his conditional release and that many of the tests used in his evaluation considered hiring a prostitute to be a sex offense. Defendant's history of hiring prostitutes was clearly relevant, and we find no error here.

¶ 38 Defendant finally contends that the trial court committed reversible error in failing to address his motion for judicial review of care and treatment and in ordering that the motion be withdrawn. Defendant filed his motion for judicial review on May 27, 2016, and the State filed a response on December 27, 2016. The matter was continued from time to time, but nothing in the record indicates that there was any type of hearing on the motion. The July 11, 2018, order recording the jury verdict in the SDP hearing notes that "Respondent withdraws motion for Judicial Review of treatment." Our review of the record reveals nothing to indicate that defendant requested that his motion be withdrawn.

¶ 39    We do not know how or why the motion for judicial review of care and treatment was deemed to be withdrawn.    In light of this absence of evidence, we remand the cause for findings as to why defendant's motion was deemed to be withdrawn.    See, *i.e.*, *Lake Environmental, Inc. v. Arnold*, 2015 IL 118110, ¶ 19 ("The appellate court, when reviewing a circuit court decision to deny sanctions, should look to the record to determine whether the circuit court had an adequate basis for making its decision.    In the event the appellate court finds that the record is insufficient for such purposes, then remanding the case may be appropriate.").    See also *In re Interest of F.D.*, 89 Ill. App. 3d 223, 226 (1980) ("We conclude we are unable to either reverse or affirm as to the first issue because the record is too incomplete to allow a determination of the question of the court's authority to enter the restitution order, and we hereby remand the cause.")    If there is no basis for the alleged withdrawal, the trial court shall reinstate defendant's motion and conduct a hearing on it promptly and with due dispatch.

¶ 40                              III. CONCLUSION

¶ 41    For these reasons, the judgment of the circuit court of Ogle County is affirmed in part, and the cause is remanded.

¶ 42    Affirmed in part and remanded.