NOTICE

Decision filed 11/12/25. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2025 IL App (5th) 250080-U

NO. 5-25-0080

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Madison County. |
| | ) | |
| v. | ) | No. 16-CF-1066 |
| | ) | |
| JAMES LOPES, | ) | Honorable |
| | ) | Neil T. Schroeder, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE HACKETT delivered the judgment of the court.
Justices Moore and Barberis concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The State established by clear and convincing evidence that the defendant remained a sexually dangerous person, and nothing in the record on appeal supports a contrary argument or otherwise raises an issue of arguable merit.

¶ 2    On January 19, 2017, a jury found the defendant, James Lopes, to be a sexually dangerous person (SDP) pursuant to the Sexually Dangerous Persons Act (Act) (725 ILCS 205/0.01 *et seq.* (West 2016)). The defendant filed two motions for release, and a jury found that he remained an SDP during both trials in 2021 and 2024. The defendant now appeals the September 11, 2024, order. The defendant's appointed attorney on appeal filed a motion to withdraw as counsel on the ground that the appeal lacks merit. *Anders v. California*, 386 U.S. 738 (1967). Defense counsel provided the defendant with a copy of her *Anders* motion and brief.

1

¶ 3    This court provided the defendant with ample opportunity to file a *pro se* brief, memorandum, or other document explaining why counsel should not be allowed to withdraw or why this appeal has substantial merit. The defendant did not file a response with this court. This court has examined counsel's *Anders* motion and brief, as well as the entire record on appeal, and has concluded that the instant appeal does indeed lack merit. This court grants counsel's *Anders* motion to withdraw as counsel and affirms the trial court's order.

¶ 4                                          I. BACKGROUND

¶ 5    On April 27, 2016, the defendant was charged by information with three counts of grooming, Class 4 felonies, in violation of section 11-25 of the Criminal Code of 2012 (720 ILCS 5/11-25 (West 2014)), and three counts of disorderly conduct, Class C misdemeanors, in violation of section 26-1(a)(1) of the Criminal Code of 2012 (*id.* § 26-1(a)(1)). The same day, the State filed a petition to declare the defendant a sexually dangerous person. The petition alleged that, pursuant to the Act, the defendant suffers from a mental disorder which has existed for a period of more than one year prior to filing the petition, and that he demonstrated criminal propensities to commit sex offenses, and toward acts of sexual assault, due to the same events in the information.

¶ 6    The information and petition both allege that the defendant committed the offenses of grooming in that he approached four minor children, girls aged 3, 4, 5, and 12, and provided a card to their guardians that included a website that contained information regarding his teachings on sexual conduct between adults and minors. For the offenses of disorderly conduct, the information and petition allege that the defendant approached (1) a five-year-old girl and told her guardian that he was on a "mini date" with the child; (2) a seven-year-old girl and said, "Hi Princess. Are you looking for your Prince? I'm right here"; and (3) a nine-year old girl and said, "Hi Princess," waited for her to leave, then said, "Bye Princess."

2

¶ 7    On May 13, 2016, the trial court appointed two experts to evaluate the defendant, Dr. Mark Carich and Dr. Kimberly Weitl. Both experts attempted to interview the defendant, but he refused to participate unless the evaluation was recorded, which was not permitted. The experts reviewed all available records to complete their evaluations, including the defendant's criminal record, his mental health history, substance abuse history, and the information included in police reports and interviews. The experts also used actuarial tools to assess the defendant's current and future risk of committing a sex offense.

¶ 8    Dr. Weitl diagnosed the defendant with pedophilic disorder, delusional disorder, and other specified personality disorder with antisocial traits. Dr. Carich diagnosed the defendant with pedophilia, other specified personality disorder with antisocial and narcissistic features, and schizophrenia. Both experts opined that the defendant was an SDP pursuant to the statute.

¶ 9    The matter proceeded to a jury trial, and the jury found the defendant to be an SDP. The defendant was then committed to the care of the Director of the Illinois Department of Corrections (IDOC) until he was recovered from being an SDP, pursuant to section 8 of the Act (725 ILCS 205/8 (West 2016)). The defendant directly appealed, and this court affirmed the finding. *People v. Lopes*, 2019 IL App (5th) 170258, ¶ 29.

¶ 10    The defendant previously filed a "motion to file writ of recovery," which the trial court interpreted as an application to show that the defendant has recovered, pursuant to section 9(a) of the Act (725 ILCS 205/9(a) (West 2018)). The defendant attached a "Rise Star Church Constitutional Writ" to his motion, which describes his "church" and religious beliefs about engaging in sexual conduct with children. Dr. Kristopher Clounch evaluated the defendant, based solely on the available records, on November 14, 2019. Dr. Clounch diagnosed the defendant with pedophilic disorder and schizophrenia. Dr. Clounch found that the defendant remained an SDP

because he "failed to recover or diminish his risk for re-offense through his participation in treatment." This motion again went to a jury trial, at which the jury found the defendant remained an SDP. The defendant did not appeal this finding.

¶ 11    The defendant filed his second writ of recovery on April 6, 2023, seeking his release. Attached to the writ was an updated "Rise Star Church Constitutional Writ." Dr. Clounch filed an updated recovery report on January 8, 2024, which is discussed below in Dr. Clounch's testimony.

¶ 12    The matter proceeded to a jury trial on September 10, 2023. The State called Dr. Clounch, who testified to the procedure of completing the evaluation, its contents, and his findings. The State questioned Dr. Clounch on his qualifications as an SDP evaluator, then tendered him as an expert in the area of clinical psychology, specifically in the area of evaluation and risk assessment of sex offenders. Defense counsel had no objection, and the trial court qualified the witness.

¶ 13    Dr. Clounch testified that the defendant was initially committed as an SDP in 2017, and Dr. Clounch completed an evaluation on the defendant in 2019. Dr. Clounch completed the updated evaluation in the present case as well in 2024. Dr. Clounch stated that to evaluate an individual, he reviews their past criminal and sexual offenses, their corresponding court and police reports, prior evaluations, mental health records, current medical records, and any treatment records. Dr. Clounch was unable to review any SDP treatment records, as the defendant refused to do any treatment since his commitment. An interview of the individual is typically conducted as well, but the defendant did not participate in an interview for the evaluation. Dr. Clounch testified that the documents he reviewed are the type of documents that experts in his field reasonably rely upon when conducting evaluations. Dr. Clounch's report was entered into evidence without objection.

¶ 14    Dr. Clounch recounted the defendant's criminal history, which included two earlier offenses in Oregon of (1) unlawful urination or defecation in a public park and indecent exposure and (2) sexual abuse in the first degree and one count of harassment. The defendant wrote about the incidents in Oregon in both writs of "Rise Star Church." Dr. Clounch described the content of the writs, stating that, "[The defendant] describes the church was established to provide a safe area that he refers to or defines as the green field as an area in which intimate relations can occur between children and adults, and that those acts inside of that green field would be legal." The lengthy document also includes a "well," which Dr. Clounch described as, "The public well or offering [the defendant] indicates is an offering of children who are sexually active being brought to him to be working with the church for other individuals to engage in sexual activity with those children and to place bids on them for sexual contact." As the main priest, the defendant would get to go first in the offering process. The writs contain many definitions and procedures for Rise Star Church, and the defendant indicates that he is seeking a child/adult relationship or marriage with a young female under the age of 12.

¶ 15    Dr. Clounch testified to the charges in the present case of grooming and disorderly conduct, described above. All the instances involved minor female children wearing green who the defendant approached and directly addressed. In the grooming charges, the defendant handed cards to the children's guardian with information about his website, including sexual relations between children and adults. In the disorderly conduct charges, the defendant approached children and called them "princess." Dr. Clounch also viewed a recorded police interview with the defendant. During the interview, when the officer asked the defendant if he ever engaged in sexual contact with a child, the defendant denied that he had but "reported that if he did in the future that he would

5

televise it or make sure other people were able to see it." Further, the defendant told officers that he was using his religious beliefs to prey on children.

¶ 16    Dr. Clounch testified that he attempted to interview the defendant, but was unable to do so because the defendant would not sign the consent form since the interview could not be recorded, as per the defendant's request. The defendant told Dr. Clounch that any information that he would provide during the interview could be obtained from the writs. Dr. Clounch completed his evaluation without the interview and diagnosed the defendant with pedophilic disorder, which is a mental disorder within the meaning of the Act. When asked how Dr. Clounch knows that the defendant still suffers from pedophilic disorder, he said:

"We can see from his most recent Constitutional Writ that it continues to express sexual interest and desire for a relationship with a young female child. As well when we are diagnosing Pedophilic Disorder we understand at this time that the sexual urges and fantasies and arousal continue throughout the life span for the individual. So an individual can ultimately put in necessary mechanisms and/or tools to avoid offending in the future; however, [the defendant] has not participated in treatment to learn any of those skills and tools. And so at this time I would consider that he's still suffering from Pedophilic Disorder."

¶ 17    Dr. Clounch then described the actuarial tools he utilized when determining the defendant's risk factors of offending. With these tools, Dr. Clounch determined that the defendant posed a well-above-average risk of offending. Dr. Clounch described the types of treatments available to the defendant while committed, including group therapy, but the defendant refused to participate in any treatment. Dr. Clounch opined that the defendant still meets the criteria to be found an SDP

6

and that the defendant is substantially probable to engage in the commission of sex offenses in the future if he is not confined.

¶ 18 On cross-examination, Dr. Clounch testified that he reviewed all the records available to him, including reports from other experts as to the defendant's mental fitness and diagnoses. Dr. Clounch said that the defendant did not have any rule violations from IDOC while committed that were sexual in nature. Dr. Clounch explained the actuarial tools and data he utilized to determine risk. Dr. Clounch stated that he did not interview any of the victims and proceeded with police reports available to him to address the defendant's previous sex offenses, which defense counsel stated was all "hearsay."

¶ 19 Neither party presented any further witnesses or evidence. The parties presented closing arguments, the trial court gave jury instructions, and the case was sent to the jury. The jury found that the defendant was still an SDP. The defendant filed posttrial motions, which were denied.

¶ 20 The defendant filed his notice of appeal on February 4, 2025. The trial court appointed Donna Polinske as the defendant's counsel on appeal.

¶ 21                                    II. ANALYSIS

¶ 22 Defense counsel filed a motion to withdraw as counsel for the defendant on the grounds that this appeal lacks merit. See *Anders*, 386 U.S. 738. The defendant did not file a response to the motion. In the brief that accompanies the motion, defense counsel raised one potential issue on appeal: whether the State proved beyond a reasonable doubt that the defendant remained an SDP pursuant to the Act.

¶ 23 Under section 9(a) of the Act (725 ILCS 205/9(a) (West 2022)), a respondent who has been found to be an SDP may submit an application to the trial court setting forth facts showing that he has recovered. Section 9(a) of the Act states:

7

"An application in writing setting forth facts showing that the sexually dangerous person or criminal sexual psychopathic person has recovered may be filed before the committing court. Upon receipt thereof, the clerk of the court shall cause a copy of the application to be sent to the Director of the Department of Corrections. The Director shall then cause to be prepared and sent to the court a socio-psychiatric report concerning the applicant. The report shall be prepared by an evaluator licensed under the Sex Offender Evaluation and Treatment Provider Act. The court shall set a date for the hearing upon the application and shall consider the report so prepared under the direction of the Director of the Department of Corrections and any other relevant information submitted by or on behalf of the applicant." *Id.*

¶ 24 Once the respondent files an application, the court must hold a hearing, and the State has the burden of proving by clear and convincing evidence that the respondent remains an SDP. *Id.* § 9(b); *People v. Hancock*, 2014 IL App (4th) 131069, ¶ 139. To find that a respondent remains an SDP, the trial court must find that (1) respondent suffers from a mental disorder existing for at least one year before the petition was filed, (2) the disorder is associated with criminal propensities to the commission of sexual offenses, (3) the respondent has demonstrated such a propensity, and (4) it is substantially probable that the respondent will commit future sex offenses if not confined. *People v. Donath*, 2013 IL App (3d) 120251, ¶ 37 (citing 725 ILCS 205/1.01 (West 2008)). At issue in a recovery hearing is the respondent's current psychological condition and whether he "is presently a sexually dangerous person within the meaning of the Act." *People v. Studdard*, 82 Ill. App. 3d 736, 740 (1980).

¶ 25 The jury's finding and the trial court's subsequent order that the respondent remains sexually dangerous may not be disturbed on review unless that decision is against the manifest

weight of the evidence. *People v. Houde*, 2019 IL App (3d) 180309, ¶ 26. A decision is against the manifest weight of the evidence only if an opposite conclusion is clearly apparent. *Id.* In recovery proceedings, it is the State's burden to prove, by clear and convincing evidence, that the defendant remains an SDP. 725 ILCS 205/9(b) (West 2022); *People v. Bailey*, 2015 IL App (3d) 140497, ¶ 12. The trier of fact is in the best position to weigh the evidence and assess the credibility of the testimony and evidence presented. *Houde*, 2019 IL App (3d) 180309, ¶ 26 (citing *In re Commitment of Fields*, 2012 IL App (1st) 112191, ¶ 62).

¶ 26    In this case, Dr. Clounch evaluated the defendant and opined that he remained an SDP. Prior to this evaluation, Dr. Clounch held the same opinion in 2019. Drs. Weitl and Carich found that the defendant was initially an SDP in 2016. Dr. Clounch considered all the available reports when developing his opinion. As to Dr. Clounch's report considered by the jury, defense counsel states in her brief that any potential argument that the report is hearsay has no merit. The report prepared by Dr. Clounch is required under the Act. 725 ILCS 205/9 (West 2022). This requirement is a statutory exception to the hearsay rule, which reasons that the report has inherent guarantees of trustworthiness in the number and professional character of the persons involved in making the report. *People v. Sweeney*, 114 Ill. App. 2d 81, 87 (1969). The findings and opinions of the professionals, particularly those who have been in close contact with the defendant, are invaluable when an expert completes the report. *Id.* Dr. Clounch appropriately relied upon the reports from other parties and experts while evaluating the defendant. Dr. Clounch also utilized various records and methodologies, in addition to the reports written by other parties, in forming his opinion that the defendant remained an SDP.

¶ 27    The defendant filed a revised writ for his "church" in 2023, which updated the original writ he submitted to the court. While the defendant did not participate in an interview, this document

provided Dr. Clounch with the defendant's current beliefs and desires to engage in sexual activity with a child as of 2023. In this lengthy, 250-page document, the defendant himself describes his desire to engage in relationships with young girls throughout the entirety of the revised writ. The defendant created a "church" which would allow him to pursue sexual relationships with young girls, under the age of 12, to have as his "little wife." As Dr. Clounch's report states, "It is clear from [the defendant]'s revised Writ, that he continues to support sexual contact and relationships with young female children." Further, the defendant chose not to engage in any forms of treatment while committed. In sum, the State presented evidence to the jury that an expert found the defendant to be an SDP, the defendant continued to present his desire for sexual contact with minor female children, and that in the seven years of commitment as an SDP, he had not engaged in any treatment whatsoever to recover.

¶ 28     It was for the jury to weigh the evidence and assess the credibility of the testimony and evidence presented. *Houde*, 2019 IL App (3d) 180309, ¶ 26. Based upon the evidence presented, the jury found that the defendant had not recovered and remained an SDP. We find nothing in the record that would indicate any error in the jury's determination and no evidence to support an opposite conclusion. Therefore, we find that the trial court's order that the defendant remained an SDP was not against the manifest weight of the evidence.

¶ 29                                    III. CONCLUSION

¶ 30     This court's examination of the entire record makes clear that this appeal does not present any issue of arguable merit. Therefore, the motion of appointed counsel to withdraw as counsel is granted, and the judgment of the trial court of Madison County is affirmed.


¶ 31     Motion granted; judgment affirmed.