NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2026 IL App (4th) 250693-U

NO. 4-25-0693

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
April 9, 2026
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Ogle County |
| DAVID TWINING, | ) | No. 95CM250 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Clayton L. Lindsey, |
| | ) | Judge Presiding. |

JUSTICE DOHERTY delivered the judgment of the court.
Justices Vancil and Grischow concurred in the judgment.

**ORDER**

¶ 1    *Held*: Appellate counsel's motion to withdraw is granted because no meritorious issues could be raised on appeal.

¶ 2    In 1995, defendant David Twining was found to be a sexually dangerous person and was committed to the Illinois Department of Corrections (DOC) under the Sexually Dangerous Persons Act (Act) (725 ILCS 205/0.01 *et seq.* (West 1994)). In 2021, defendant filed an application for discharge or conditional release under the Act (725 ILCS 205/9 (West 2020)). In 2025, the trial court found defendant remained a sexually dangerous person and denied the application.

¶ 3    On appeal, defendant argues that the denial of his application was against the manifest weight of the evidence. Appellate counsel filed a motion and brief pursuant to *Anders v. California*, 386 U.S. 738 (1967), to withdraw as counsel, contending that the appeal of this case presents no potentially meritorious issues for review. We agree, and we therefore grant the motion

to withdraw and affirm the trial court's judgment.

¶ 4                                    I. BACKGROUND

¶ 5                                   A. Prior Proceedings

¶ 6            Following a 1995 bench trial, defendant was adjudicated a sexually dangerous person and committed to DOC's custody for treatment. The Appellate Court, Second District, affirmed the sexually dangerous person adjudication in *People v. Twining*, 292 Ill. App. 3d 1126 (1997) (table).

¶ 7            Defendant completed his treatment program. In 2002, he filed an "application for recovery," seeking a hearing and release from custody. Following a bench trial, the trial court found that defendant no longer appeared to be dangerous but that under conditions of institutional care it was impossible to determine with certainty that he had fully recovered. The court ordered defendant's release, subject to his compliance with conditions, including participating in sex offender treatment; attending a specified alcohol recovery group on a regular basis; abstaining from alcohol or illegal drug use; and obeying all rules of parole and applicable laws, including those related to sex offender registration.

¶ 8            In 2005, the State filed a petition to revoke defendant's conditional release because he was allegedly "awaiting physical eviction" and could not be adequately supervised if he became homeless. The trial court permitted defendant to pursue housing with a relative and ordered him to adhere to the conditions of his release.

¶ 9            In 2009, the State filed another petition to revoke defendant's conditional release, but it was ultimately withdrawn after defendant was convicted in Cook County of failing to register a change of address as a sex offender. He was sentenced to DOC and released in 2012.

¶ 10            In 2013, the State filed a new petition to revoke defendant's conditional release,

alleging multiple violations of his release terms. Defendant waived his right to a hearing and admitted the allegations of drinking alcohol, using illegal drugs, failing to maintain full-time employment, failing to cooperate with his sex offender counseling, engaging in sexual activity with prostitutes, having unauthorized visitors at DOC's paid residential facility, and having numerous pictures of children in his room. The trial court relied specifically on the grounds related to alcohol and drug use, unemployment, and lack of cooperation in therapy to find that he violated the terms of his conditional release, so it revoked his conditional release and remanded him to DOC.

¶ 11      In 2016, defendant filed an application for discharge or conditional release under the Act. After a trial, the jury returned a verdict finding that defendant is still a sexually dangerous person, and his petition for discharge or conditional release was denied. That determination was affirmed on appeal. *People* v. *Twining*, 2019 IL App (2d) 180653-U, ¶ 41.

¶ 12                              B. Current Proceedings

¶ 13      Defendant filed his latest *pro se* application for discharge or conditional release in 2021. He alleged that he had not reoffended or been so accused, is 76 years old with health conditions, and is no longer a sexually dangerous person.

¶ 14      The Ogle County public defender was appointed to represent defendant, and his motion for an independent psychological evaluation was granted. In May 2025, the application was called for bench trial after defendant waived his right to a jury.

¶ 15      At trial, the State called Dr. Kristopher Clounch, the same person who evaluated defendant and served as a witness in his previous conditional release proceedings in 2009 and 2016. Defendant called Dr. Steven Gaskell. Without objection, both witnesses were received as experts experienced in sex offender assessments. Their testimony showed that they are clinical

psychologists who evaluated defendant by interviewing him and reviewing, among other things, the following: records pertaining to his medical, psychological, and psychiatric history; prior clinical evaluations regarding his status as a sexually dangerous person; DOC records; and police records. Their reports were entered into evidence without objection.

¶ 16　　　　The testimony of both experts indicate that they assessed defendant using the Diagnostic and Statistical Manual of Mental Disorders-Fifth Edition (DSM-5) and diagnosed him with several mental disorders lasting longer than a year, namely, other specified paraphilic disorder, nonconsenting partners; exhibitionist disorder; other specified paraphilic disorder, telephone scatologia; stimulant use disorder; and alcohol use disorder. Dr. Gaskell also diagnosed him with other specified personality disorder with antisocial traits. Both experts testified that defendant has a criminal propensity to commit sexual offenses and sexual assault or sexual molestation of children.

¶ 17　　　　In addition to their clinical judgments, the experts conducted adjusted actuarial assessments, including use of Static-99R and 2002R, which are often-used actuarial instruments for sex offender evaluators and which account for protective factors, such as health. Defendant's medical records indicate he has diabetes mellitus type II, hypertension, emphysema, gastroesophageal reflux disease, high cholesterol, and hearing difficulties, but Dr. Clounch testified that he did not believe, after consulting with defendant's doctor and observing defendant's mobility, that these conditions were protective factors. When administering the Static-99R test and adjusting for protective factors, both experts assigned defendant a score of 6, which means his risk of recidivism is well above average. Dr. Gaskell also administered the 2002R test. After adjusting for protective factors, such as age, treatment progress, and health condition, defendant scored a 7, placing his risk of recidivism well above average.

¶ 18        The experts' testimony and reports show that defendant's sexual crimes occurred over a span running from 1965 to 1995 and include kidnapping, disorderly conduct, burglary, false imprisonment of another, enticing a child for immoral purposes, lewd and lascivious behavior, deviate sexual assault, rape, and harassment by telephone. According to Dr. Clounch, defendant admitted during his evaluation that throughout his life, he made approximately 300 obscene phone calls and has had approximately 100 noncontact victims, four contact victims who were under the age of 18, and one contact victim who was an adult.

¶ 19        Dr. Clounch further indicated that both of defendant's prior conditional releases were ultimately revoked due to his failure to abide by the terms. He violated his most recent conditional release by drinking alcohol, using illegal drugs, not maintaining full-time employment, and not cooperating with his sex offender counseling. When asked about his involvement with prostitutes, defendant denied that it was deviant or resulted from cognitive distortions, stating: "I'm not hurting them. I'm helping, giving them a place to get high and get off the streets," "I'm going back to prison anyway, so I will do what I want," "I didn't have to work hard to get a date to have sex," and "I can pay for it and get anything I want." Dr. Gaskell testified that prostitution is a Category A sex offense, meaning that it is not against a nonconsenting person but is still a sex crime, and defendant's use of prostitutes is "an indication that he was not applying the treatment" he completed in 2002.

¶ 20        Regarding rehabilitation, the expert testimony and reports show that defendant has a history of not cooperating with sex offender counseling. In 2009, he was charged with three counts of assault, and though no disposition was noted, DOC indicated that the charges involved defendant's battery of his therapist. Upon his reconfinement in 2014, he did not engage in treatment until 2017. In 2018, he completed a semiannual program evaluation, which scored

defendant in 29 areas. He was rated as "Some Need for Improvement," "Considerable Need for Improvement," or "Very Considerable Need for Improvement" in 27 of the 29 categories, including, but not limited to attendance, "criminal and rule breaking behaviors," "stage of change," "impulsivity," "sexual offense disclosure," "acceptance of responsibility," "sexual attitudes," "sexual interest," "sexual risk management," "recognizes high risk factors and triggers," and "understands the concept of victim empathy." Around the same period, he voluntarily signed out of the program, was removed from an anger management group for multiple absences, and voluntarily signed out of a therapy group. He had an opportunity to join treatment again in 2021 but did not do so. His reenrollment in 2023 occurred after filing the present application, and his overall attendance was spotty.

¶ 21　　　　Ultimately, both experts agreed that defendant remains "a sexually dangerous person." However, while Dr. Clounch testified that "it is substantially probable that he will re-offend if not confined within an institution," Dr. Gaskell testified that at least some of his mental disorders appear to be in remission and that "based on his advanced age, his health status, his previous completion of treatment and his recent progress in treatment, that his risk can now be successfully managed on conditional release."

¶ 22　　　　Defendant chose not to testify. After closing arguments, the trial court took the issues under advisement and ultimately denied defendant's application for discharge or conditional release, citing the expert witness testimony and evaluations entered into evidence.

¶ 23　　　　This appeal followed. Counsel was appointed to represent defendant on appeal, but he has now filed an *Anders* motion and brief seeking to withdraw and contending there is no issue of merit to advance on appeal. Adequate notice of the motion and brief were provided to defendant by counsel and the clerk of this court, and he did not file a response.

¶ 24                                    II. ANALYSIS

¶ 25                              A. *Anders* Procedure

¶ 26        The United States Supreme Court set forth the procedure for appellate counsel to withdraw when he concludes an appeal is frivolous. See *Anders*, 386 U.S. at 744; see also *People v. Lopes*, 2025 IL App (5th) 250080-U (applying *Anders* to a motion to withdraw as appointed counsel in an appeal from a determination that the defendant was a sexually dangerous person). Counsel's request to withdraw must be accompanied by a brief referring to anything in the record that could conceivably support an appeal. *Id.* A copy of this motion and brief must be furnished to the client, who then must be given time to raise any potential arguments. *Id.* After identifying potential issues for an appeal, counsel must form arguments in support of these potential issues. *Id.*; *In re Brazelton*, 237 Ill. App. 3d 269, 271 (1992). Counsel must demonstrate why these arguments are frivolous. See *id.* The appellate court will review the record to determine whether the potential arguments are indeed frivolous. *Id.* We bear the ultimate responsibility to make that determination. *People v. Teran*, 376 Ill. App. 3d 1, 5 (2007).

¶ 27                    B. Sexually Dangerous Person Determination

¶ 28        Section 9(a) of the Act (725 ILCS 205/9(a) (West 2020)) provides: "An application in writing setting forth facts showing that the sexually dangerous person *** has recovered may be filed before the committing court." In a hearing on the application, "[t]he State has the burden of proving by clear and convincing evidence that the applicant is still a sexually dangerous person." *Id.* § 9(b). "If the person is found to be no longer dangerous, the court shall order that he or she be discharged." *Id.* § 9(e). A sexually dangerous person under section 1.01 is anyone who is

> "suffering from a mental disorder, which mental disorder has existed for a period of not less than one year, immediately prior to the filing of the petition hereinafter

- 7 -

provided for, coupled with criminal propensities to the commission of sex offenses, and who have demonstrated propensities toward acts of sexual assault or acts of sexual molestation of children." *Id.* § 1.01.

The finding that a defendant remained a sexually dangerous person will not be disturbed on review unless it is against the manifest weight of the evidence. *People v. Donath*, 2013 IL App (3d) 120251, ¶ 38. "A decision is against the manifest weight of the evidence only if an opposite conclusion is clearly apparent." *Id.*

¶ 29        Here, two qualified experts, Drs. Clounch and Gaskell, evaluated defendant and opined that he remained sexually dangerous. Notably, Dr. Gaskell reached this opinion as defendant's expert witness. Their testimony was supported by detailed reports, which we may consider, as they contain statutorily required information, such as psychiatric records, and were admitted into evidence without objection. See 725 ILCS 205/9 (West 2024); *People v. Olmstead*, 32 Ill. 2d 306, 310 (1965).

¶ 30        Regarding defendant's mental disorders, the evidence must show "a congenital or acquired condition affecting the emotional or volitional capacity that predisposes a person to engage in acts of sexual violence." 725 ILCS 205/4.03 (West 2024). Here, the experts evaluated defendant using DSM-5, and they testified that his diagnosed mental disorders have lasted not less than one year and include specified paraphilic disorder, nonconsenting partners; exhibitionist disorder; and other specified paraphilic disorders, telephone scatalogica. While Dr. Gaskell testified that *some* of these *may* be in remission, it is notable that he independently reached the same diagnoses as Dr. Clounch. Furthermore, the record shows a highly extensive history of sexual offenses against many people, including children, with the number of known offenses totaling a few hundred over the course of various decades. This history is an appropriate consideration in

determining his mental disorders. See *People v. P.T.*, 233 Ill. App. 3d 386, 393 (1992) ("[E]vidence of prior sex acts may be admissible to prove that the defendant has a propensity to commit sex crimes and that his mental disorder has existed for more than one year.").

¶ 31    Regarding defendant's criminal propensity, the evidence must show a substantial probability "that the person subject to the commitment proceeding will engage in the commission of sex offenses in the future if not confined." 725 ILCS 205/4.05 (West 2024). Here, the experts specifically testified that defendant has a long-standing criminal propensity to commit sex offenses and that defendant has a propensity to sexually assault and sexually molest minors. Like with his mental disorders, defendant's history of sexual offenses and convictions support the experts' testimony. See, *e.g.*, *People v. Allen*, 107 Ill. 2d 91, 105 (1985); *P.T.*, 233 Ill. App. at 393.

¶ 32    Defendant argues that his age and health should be considered and that years have passed since his last conviction for a sex crime. But this argument is unavailing for a number of reasons. First, some of his prior sex offenses do not necessarily require a great deal of mobility, including his engagement with prostitutes, making obscene phone calls, or exposing himself to minors. Even Dr. Gaskell, defendant's expert witness, testified that his use of prostitutes indicates he is not applying what he was taught in treatment.

¶ 33    Second, while the experts reached different opinions about whether defendant's risk of recidivism could be managed on conditional release, they agreed that defendant was indeed sexually dangerous. Further, the adjusted actuarial assessments, including the Static-99R and 2002R, indicate defendant has an above-average risk of recidivism.

¶ 34    Third, we note that the extent to which risk can be managed on conditional release is dependent on defendant's ability to actually abide by the conditions put into place, and he has shown an inability to follow the rules of conditional release. He violated his two prior conditional

releases, including by "using prostitutes," and expressed a lack of understanding of why that behavior was problematic. These are considerations that support the finding that a person would reoffend on release. See *In re Commitment of Gavin*, 2014 IL App (1st) 122918, ¶ 20.

¶ 35 Fourth, defendant has not meaningfully engaged in treatment, including after filing this petition. His most recent semiannual program evaluation scores show a need for improvement in 27 of 29 categories. Since the last time he was found sexually dangerous, he has voluntarily withdrawn from treatment programs and therapies, only recently reenrolling after filing this petition, and even then missing a number of classes. Notably, treatment is at the core of recovery for defendant and an important protective factor. See *People v. Trainor*, 196 Ill. 2d 318, 323-24 (2001) ("The Act's purpose is *** to subject sexually dangerous persons to treatment such that the individual may recover from the propensity to commit sexual offenses and be rehabilitated.").

¶ 36 Based on this record, the trial court's determination that defendant was still a sexually dangerous person is supported by ample evidence. We conclude that defendant's appeal cannot meet the tall task of demonstrating that the opposite conclusion is "clearly apparent," nor would the trial court's decision be found "unreasonable, arbitrary, or not based on the evidence." *In re Keyon R.*, 2017 IL App (2d) 160657, ¶ 16. As there is no viable issue to raise on appeal, appointed counsel's motion to withdraw is granted.

¶ 37                                III. CONCLUSION

¶ 38 For the reasons stated, we grant the motion to withdraw and affirm the trial court's judgment.

¶ 39 Affirmed.